David COMPARETTO

v.

The DIAZ CORPORATION and United States Fidelity & Guaranty Company.

Supreme Judicial Court of Maine.

Argued June 16, 1981.

Decided July 14, 1981.

Mills & Mills, Peter Mills (orally), Paul H. Mills, Farmington, for plaintiff.

Norman & Hanson, Theodore H. Kirchner (orally), John M. Wallach, Portland, for defendants.

Before McKUSICK, C. J., and WER-
NICK, GODFREY, ROBERTS and CAR-
TER, JJ.

WERNICK, Justice.

Employer Diaz Corporation has appealed
from a pro forma judgment of the Superior
Court (Penobscot County) affirming a deci-
sion of the Workers' Compensation Commis-
sion awarding worker David Comparetto
compensation for partial (40%) incapacity to
earn.

The employer asserts two points on ap-
peal: first, the evidence was insufficient to
show that the worker was incapacitated
and, second, even if the evidence was suffi-
cient in this regard, it was inadequate to
show that the incapacity was causally con-
nected to the injury the worker had sus-
tained in the course, and arising out, of his
employment. The worker has filed a cross-
appeal in which he contends that once the
Commission found, properly the worker
says, that he had some degree of incapacity,
the evidence required as a matter of law an
award of compensation for total incapacity
to earn.

We deny both the appeal and the cross-
appeal and sustain the Superior Court judg-
ment.

On January 12, 1978 the worker suffered
a work-related injury to his right arm and
shoulder as the result of the continuous use
of a 16 pound sledge hammer. The worker
and his employer entered into an approved
agreement, effective January 12, 1978,
which provided the worker with compensa-
tion for total incapacity. This compensa-
tion was terminated on January 9, 1979
when the Commission sustained the employ-
er's Petition for Review of Incapacity on
the basis of its finding that the worker no
longer was incapacitated to earn.

On May 18, 1979 the worker filed a Peti-
tion for Further Compensation in which he

alleged that subsequent to January 9, 1979,
he experienced a further period of incapaci-
ty attributable to his January 12, 1978
work-related injury. The worker's claim
was that after January 9, 1979 the original
injury to his right shoulder further mani-
fested itself in a series of disabling symp-
toms that were not present when the Com-
mission, in granting the employer's Petition
for Review of Incapacity, had found that
his incapacity to earn had ended. The
worker described these new symptoms as
severe cramping and pain in both his right
shoulder and the trapezius muscle of his
neck. The worker said that this condition
prevented him from undertaking any em-
ployment for which he was qualified.

At hearings on the worker's Petition for
Further Compensation, testimony was giv-
en by the worker, orthopedic surgeon Dr.
John Greene, and neurosurgeon Dr. Richard
Swengel. By agreement of the parties, the
Commission also took into consideration
written medical reports from Drs. Greene,
Swengel, and Prior.[1]

The Commission found that

"the employee began to experience a
second but less than total period of inca-
pacity at the time of Dr. Swengel's April
9, 1979 examination. Since April 9, 1979,
the employee has experienced 40% partial
incapacity from work. The employee did
not engage in a reasonable search for
suitable work. Rather, the employee ap-
pears to have engaged in a search for
work for which, by virtue of his condi-
tion, he is ill-suited at best."

Accordingly, the Commission ordered

"that the employer or its insurer pay the
employee compensation for 40% partial
incapacity beginning on April 9, 1979 and
continuing in accordance with the provi-
sions of the Act."

*1.*

On a Petition for Further Compen-
sation the worker, as the moving party,

1. Dr. Roderick E. Prior is an internist who
treated the worker for a series of gastrointesti-
nal problems.

**1328**

bears the burden of demonstrating that he is either totally or partially incapacitated to earn as the result, in whole or in part, of a work-related injury. *Coty v. Town of Milli-nocket*, Me., 393 A.2d 156 (1978). The employer contends that, here, it must be held as a matter of law that the worker failed to meet his burden of proof because, says the employer, the record is devoid of evidence showing any current physical disability.

■ We disagree with the employer's assessment of the record. Although Dr. Greene stated that he "never felt that this patient had significant actual physical disability", the testimony of Dr. Swengel and the worker is to the contrary. Both the worker and Dr. Swengel testified that pain and cramping in the worker's shoulder and neck impaired his ability to perform the manual labor that always had been his source of employment. In light of this evidence the Commission's finding of fact that the worker was 40% disabled is not clearly erroneous and, therefore, will not be disturbed on appeal.

We reject, too, the employer's alternative contention that even if the Commission was not in error in finding the worker currently disabled, the Commission was wrong in finding the disability causally related to the worker's original injury.

Neurosurgeon Dr. Richard Swengel stated in his written report of May 11, 1979:

> "I strongly believe that Mr. Comparetto from a historical basis developed either deltoid bursitis or bicipital tendonitis along with a muscular strain (myositis) out of the trapezius muscle on the right coincident with his customary and usual employment on the end of a 16 pound sledge hammer. Given the passage of time with multiple examinations by multiple physicians without cessation of his symptomatology, the muscular disorder and symptomatology tended to spread and become *amplified*."

The employer seeks to avoid the force of this evidence as supporting the Commis-

sion's finding of causal relationship, by adverting to a ruling made by the Commission regarding oral testimony given by Dr. Swengel. When Dr. Swengel attempted to respond at the hearing to a question about his findings concerning his diagnosis of deltoid bursitis or bicipital tendonitis, the Commission sustained an objection to his testimony made on the ground that Dr. Swengel, being a neurosurgeon, was not qualified to give an opinion on the cause of a soft tissue or muscular injury. The employer argues that having excluded Dr. Swengel's oral testimony of his opinion, the Commission could not properly rely on the opinion he expressed in his written report.

We find the argument unpersuasive because the record shows that the Commission's rejection of Dr. Swengel's orally proffered testimony resulted from its preliminary misconception of the worker's claim, its initial perception that the worker was complaining of a disability arising only in the muscles of his right arm and shoulder. Subsequent discussions at the hearing, however, clarified that the worker's claim was that his current disability was attributable to his original work-related injury as now manifesting itself in the *trapezius area of his neck*. We must, therefore, analyze the admissibility of Dr. Swengel's testimony in light of this clarification, on the basis that the worker's injury, originally affecting his right shoulder and arm, was now manifesting itself in pain and cramping in his neck and shoulder. Dr. Swengel testified that it is

> "part of the standard neurological examination of the upper extremities and cervical spine . . . to examine all the muscles that are related to that general area and the neurologic origin of their function."

The thrust of this testimony by Dr. Swengel is that his conclusions regarding causation had been derived from a *standard neurological* examination. Neither the employer nor the Commission disputed this point. Moreover, the record shows that after the above described clarifying discussion had

occurred, the Commission admitted as evidence Dr. Swengel's testimony on the question of the cause of the worker's present disability.

We therefore conclude that Dr. Swengel's determination that the worker's disability was causally related to his original work-related injury, based as it was on a standard neurological practice, was competent and admissible evidence on the question of causation. Being thus admissible, and admitted, evidence, Dr. Swengel's opinion on causation was a sufficient basis for the Commission's finding that the worker's 40% physical disability was causally related to his work-related injury.

### 2.

In his cross-appeal the worker contends that the evidence allows for no rational conclusion other than that he be awarded compensation for total incapacity to earn. The reason, says the worker, is that even though, concededly, his physical disability is only partial, nevertheless the evidence conclusively establishes that by reason of his physical disability as attributable to his work-related injury, no remunerative work is available to him within his community.

We cannot agree.

According to the worker's testimony, he made three efforts in 1979 to work for a masonry contractor mixing mortar and transporting bricks and blocks. He also worked several days in June, 1979 for a building contractor and on two separate occasions attempted to work with a drywall contractor. During August, September and October, 1979 he worked several days cleaning up in a restaurant. According to the worker, after a short time in each of the above-described jobs, his muscular difficulties recurred and prevented him from doing further work.

The Commission found that

"[t]he employee did not engage in a reasonable search for suitable work. Rather, the employee appears to have engaged in a search for work which, by virtue of his condition, he is ill-suited at best."

Fairly interpreted, this finding means that the Commission looked upon the worker's attempts to perform work as directed almost exclusively toward performing precisely the kind of work, manual labor, for which the worker was, as the result of his disability, not physically qualified. So interpreted, the finding is, in effect, the Commission's statement of its conclusion, which we find a proper one on all the evidence, that far from establishing at all (let alone conclusively) that he was totally incapacitated to earn, the worker failed to meet his ultimate burden of proof in that regard.

The entry shall be:

The appeal and the cross-appeal are denied; pro forma judgment affirmed.

Further ordered that the employer pay to the employee an allowance for counsel fees in the amount of $550.00, together with his reasonable out-of-pocket expenses for this appeal.

All concurring.