**Norfolk**

GREAT ATLANTIC & PACIFIC TEA CO., et al.

v.

JEFFREY L. BATEMAN

No. 1046-86

Decided July 21, 1987

COUNSEL

Charles F. Midkiff (William F. Etherington; Christian, Barton, Epps, Brent & Chappell, on brief), for appellant.

Richard B. Donaldson, Jr. (Jones, Blechman, Woltz & Kelly, P.C., on brief), for appellees.

OPINION

**COLE, J.** — The appellants, Great Atlantic & Pacific Tea Company and Underwriters Adjusting Company, appeal from a decision of the Industrial Commission awarding compensation to the appellee, Jeffrey L. Bateman. Two issues are raised: (1) whether the Industrial Commission applied the proper standard of review

to the claimant's application seeking a reinstatement of temporary total disability benefits; and (2) whether there was sufficient evidence in the record to support the commission's finding that the claimant made a reasonable effort to market his remaining work capacity. We do not decide the first issue because we find that the evidence was insufficient to support the commission's holding that the claimant made a reasonable effort to market his remaining work capacity; for this reason, we reverse.

On November 3, 1980, the claimant suffered a compensable injury when he fractured his right leg. He received temporary total and temporary partial disability benefits for various periods, the last being for total disability from March 26, 1984, through December 29, 1985. The claimant also received compensation from December 30, 1985, through May 1, 1986, for a ten percent permanent partial disability of his right leg. On April 30, 1986, he applied for reinstatement of temporary total disability benefits pursuant to Code § 65.1-56. A hearing was held on June 27, 1986, to resolve the issue.

The appellants contend that the Industrial Commission did not apply the proper standard of review to Bateman's application seeking reinstatement of temporary total disability benefits following payments for the ten percent permanent partial disability of his right leg. Bateman argues that he had an award from the Industrial Commission and was receiving temporary total compensation until a permanent disability rating was assigned to him as of December 30, 1985; that at that time he had no choice but to accept the permanent partial award; and that he now should be restored to his previous position. He contends that the burden of proof to show that he can return to his regular employment or had been offered or provided selective employment within his capacity or refused suitable selective employment was upon the appellants.

Compensation for loss of earnings due to an injury is governed by Code §§ 65.1-54 and 65.1-55. Benefits under these sections for total and partial incapacity compensate the employee for loss of earnings resulting from the injury. Compensation for loss of, or loss of use of a member, is provided for under Code § 65.1-56. The right to compensation under this section does not depend on incapacity for work or loss of earnings, but is indemnity for permanent loss of use, total or partial, of the injured member. *Virginia Oak Flooring Co. v. Chrisley*, 195 Va. 850, 856-57, 80

S.E.2d 537, 541 (1954); *J. A. Foust Coal Co. v. Messer*, 195 Va. 762, 766, 80 S.E.2d 533, 535 (1954). After the scheduled benefits for "loss of use" are paid under Code § 65.1-56,[1] the employee may be entitled to further benefits for loss of earnings under Code §§ 65.1-54 and 65.1-55.

In *Pocahontas Fuel Co. v. Agee*, 201 Va. 678, 112 S.E.2d 835 (1960), Agee, age forty-seven, had a seventh grade education and had no training or experience in any work other than the coal mines. Though he was unaware that he had silicosis when he was laid off on October 30, 1957, the medical evidence and his testimony proved that he was afflicted with silicosis to some degree at that time. During the latter part of 1958 and early 1959, he progressed to second stage silicosis and employment in the mines was barred to him because of his condition. The issue was whether the evidence before the commission was sufficient to find that the claimant suffered total work incapacity because of silicosis. The Supreme Court held that "[t]hough his physical disability was only partial, yet the award of total incapacity payments under § 65-51, Code 1950, [now Code § 65.1-54] was warranted if the commission could reasonably find from the evidence that because of his disability he was unable to market his remaining capacity for work." *Id.* at 681, 112 S.E.2d at 837.

In *Pocahontas Fuel Co. v. Barbour*, 201 Va. 682, 112 S.E.2d 904 (1960), a case factually similar to *Agee* and decided the same day, the Supreme Court quoted with approval one of the commissioners who said: "No injury or occupational disease is compensable as a total incapacity until it is proven that the injury or disease has effectually closed the labor market to the employee. A showing that he may not return to his former occupation is not such proof." *Id.* at 684-85, 112 S.E.2d at 906.

In *Big D Quality Homebuilders v. Hamilton*, 228 Va. 378, 322 S.E.2d 839 (1984), upholding award of temporary total disability benefits where the employer offered no selective work and claim-

---

[1] Code § 65.1-56, in pertinent part, provides:

[A]fter compensation has been paid as provided herein, the employee may within one year from the date compensation was last due under this section file an application for compensation for incapacity to work, subject to the provisions of §§ 65.1-54 and 65.1-55. Such application shall be considered and determined as of the date incapacity for work actually begins or as of the date fifty days prior to the date of the filing whichever is later.

ant found four jobs for himself, the Supreme Court distinguished its decisions in *Agee* and *Barbour*. The court, explaining that the commission awarded them compensation for total disability for silicosis contracted in the coal mines, stated: "We held that although the burden was on the employees to prove that they were totally incapacitated for all work, they had failed to show that they could not perform any work or that they had made reasonable efforts to obtain other employment." *Id.* at 382, 322 S.E.2d at 841.

In *Washington Metropolitan Area Transit Authority v. Harrison*, 228 Va. 598, 324 S.E.2d 654 (1985), the claimant sustained a compensable injury on August 18, 1982. He received temporary total compensation under a memorandum agreement, but questioned the wage loss and filed an application for a hearing on November 24, 1982. At the hearing on March 1, 1983, the wage calculation was resolved against the employer. The question then arose whether Harrison was entitled to temporary total disability benefits beginning December 8, 1982, the day his employment was terminated for economic reasons. Following the rule it had applied in earlier cases, the commission held that Harrison " 'is entitled to the resumption of compensation benefits . . . effective December 8, 1982 and continuing until he recovers from the effects of his injury and can return to his regular employment, or until other selective employment is obtained for him.' " *Id.* at 600, 324 S.E.2d at 655.

Harrison's contention was that he was in a better position than the claimants in *Agee* and *Barbour* because of the memorandum agreement and he claimed that in his case the employer had the burden of proof. In reversing the commission, the Supreme Court stated:

> But, at the time Harrison's hearing was conducted, the Commission had entered no award, Harrison had not proved the nature or extent of his disability in that forum, and, while the question of *compensability* of the injury had been mooted by the agreement, Harrison's procedural posture as to his *entitlement* was otherwise no different than that of the claimants in *Agee* and *Barbour*. His disability, like theirs, was only partial, and to establish entitlement, he had the burden of proving that he had made a reasonable effort to procure

suitable work but unable to market his remaining work capacity.

*Id.* at 601, 324 S.E.2d at 656.

■ Factually, we believe that a distinction can be made between this case and *Agee, Barbour, Hamilton,* and *Harrison.* Bateman did have an award under Code §§ 65.1-54 and 65.1-55 for temporary total and temporary partial benefits. These benefits were terminated when payments were paid to him for permanent partial benefits under Code § 65.1-56. However, we conclude that this is a distinction of no consequence. In order to prevail in this case the claimant must rely upon the language of Code § 65.1-56, which states: "After compensation has been paid as provided herein, the employee may . . . file an application for compensation for incapacity to work, subject to the provisions of §§ 65.1-54 and 65.1-55." The language of this statute places the burden upon the claimant to file an application. General principles of workman's compensation law provide that "[i]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence." *Pilot Freight Carriers, Inc. v. Reeves,* 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986); *see also J. A. Jones Construction Co. v. Martin,* 198 Va. 370, 373, 94 S.E.2d 202, 204 (1956). We conclude that the burden of proof in this case is upon the claimant to prove all of the essential allegations of his case.

In *Agee* and *Barbour,* neither claimant had an award and thus both had the burden of proving a compensable accident or occupational disease. This was not difficult to do because the medical evidence establishing silicosis was well documented. However, they also had to prove entitlement to the temporary total or temporary partial benefits under Code §§ 65.1-54 or 65.1-55 by proving that they had made a reasonable effort to procure suitable work but were unable to market their remaining work capacity.

In *Harrison,* the agreement between the parties mooted the compensation issue because the parties agreed that the injury was compensable. However, Harrison still had the burden of proving his entitlement to benefits, and to do that he had the burden of proving that he made a reasonable effort to procure suitable work but was unable to market his remaining work capacity.

Having enunciated the principles upon which this case must be decided, we find that it is not necessary for us to determine whether the Industrial Commission did or did not apply the proper standard of review to Bateman's application. We will assume that the commission applied the proper standard of review, but we find that the evidence is insufficient to support the commission's finding that the claimant made a reasonable effort to secure suitable work but was unable to market his remaining work capacity.

The opinion of the commission states:

[I]t is clear from the medical records that the claimant cannot return to his former employment and, as noted above, this alone sufficiently establishes a basis for awarding compensation pursuant to § 65.1-56. However, the claimant has gone further and offered credible evidence of bona fide attempts to secure employment with at least twelve employers during the first six months of 1986.

A review of the record clearly supports the position that the claimant cannot return to his former employment; but we do not find that this conclusion alone establishes a basis for awarding compensation pursuant to Code § 65.1-56. The medical evidence established that Bateman was injured by a conveyor belt resulting in a fracture of his fibula. He underwent several surgical procedures and continues to be symptomatic. Dr. William J. Mullins advised Bateman to change his employment status to protect his right knee and eliminate stressful use of the right leg, and that a sitting type job would be preferable. In a report dated June 19, 1986, Dr. James L. Phillips stated:

He continues to have soreness in his ankle with diffuse swelling and tenderness laterally. He continues to have soreness and crepitatios in his knee. He has been advised to continue exercising his ankle and his knee, to continue working out at the spa, and to avoid any type of work which requires prolonged walking or standing on concrete floors, and to absolutely avoid stooping, crawling, kneeling, or climbing.

Bateman, by his own admission, is only partially disabled. Before the deputy commissioner, he offered testimony to establish that he made a reasonable effort to market his remaining work

capacity. The record reveals that Bateman was hampered by his physical disability and by the limitations imposed upon him by his medical doctors, but these facts, standing alone, do not support the commission's award.

A high school graduate, Bateman had some minimal training in auto mechanics. At the time of his injury he was working as a retail clerk in an A & P store. Previously he had worked as a retail clerk for the Hampton Hobby House and W. T. Grant department store.

The record indicates that Bateman reached maximum medical improvement by December 30, 1985. At the hearing before the deputy commissioner on June 27, 1986, he offered testimony to prove that he was unable to market his remaining work capacity. His evidence disclosed that during the preceding six month period, he asked the person behind the counter at Farm Fresh Video if there was an opening. Upon being advised that there was none, he pursued the matter no further. He attended a T.W.A. flight attendants' meeting, but found them to be seeking attendants with experience. The job required extensive standing and walking. He contacted American Telephone and Telegraph about an operator's job, but he had no experience in the field. He contacted York Oil Company about a sales job for which he was not qualified. He thought he would like to work for a travel agency, contacted six agencies, but all required persons with experience. Of his thirteen contacts, at least eight were oral inquiries only; he estimated that he completed only four or five written job applications. He did not register with the Virginia Employment Commission and did not seek their assistance in finding work.

A rehabilitation specialist testified on behalf of the appellants. He reviewed the claimant's records and agreed that he should not work at jobs requiring extensive standing and walking. In commenting upon Bateman's effort to secure employment, he stated that the flight attendant's job required standing, walking and lifting, as did the retail and video positions. Moreover, the travel agency positions required training that the claimant did not possess. He was of the opinion that none of these were appropriate for Bateman.

The specialist identified over thirty sedentary jobs suitable for Bateman advertised in local newspapers from June 17 to June 26,

1986. He contacted eight employers and found that six of them would have considered hiring claimant for the job advertised.

Counsel for both parties have suggested that we fix guidelines to aid in making a determination as to what constitutes a "reasonable effort" to market "remaining work capacity." We decline to do so because many factors are involved. What is reasonable in one area, or in one industry, or even in one season might not be reasonable in another. The employee must obviously exercise reasonable diligence in seeking employment, and what is reasonable in a given case will depend upon all of the facts and surrounding circumstances. An important factor is the physical condition and the limitations placed upon the employee by his physicians. However, "[t]he effort to seek employment will not be deemed reasonable if the claimant places undue limitations on the kind of work he will accept, including limitations not justified by the character of his impairment." 2 A. Larson, *Workmen's Compensation Law* § 57.61(d) (1987); *see also Watkins Motor Lines, Inc. v. Privette*, 416 So. 2d 850, 851 (Fla. Dist. Ct. App. 1982); *Comparetto v. Diaz Corp.*, 431 A.2d 1326, 1329 (Me. 1981); *Pelchat v. Portland Box Co.*, 155 Me. 226, 230-31, 153 A.2d 615, 618 (1958). Lack of mental capacity and education may be taken into account. 2 A. Larson, *Workmen's Compensation Law* § 57.51(d) (1987). In *Florida Power & Light Co. v. Chatman*, 423 So. 2d 607 (Fla. Dist. Ct. App. 1982), an award for compensation was reversed because many jobs applied for were in areas where the claimant had no experience. The court must consider "claimant's other training, experience, his educational background and the fact that his injury was not so serious as to prevent his satisfactorily performing his job for approximately a year and a half." *Churchill v. City of Albequerque*, 66 N.M. 325, 347 P.2d 752, 755 (1959). In *Brown v. Industrial Commission*, 96 Ill. 2d 228, 449 N.E.2d 1333 (1983), claimant was not entitled to be automatically classified as unemployable because of severity of injury, in absence of evidence that no employment was available for a person with claimant's disability, and in view of the fact that the record failed to demonstrate that claimant was obviously unemployable.

During a period of almost six months, Bateman filed only four or five written job applications and no resumes. The evidence indicated that there were numerous jobs available that were appropri-

ate for him in view of his education, work history and physical restrictions. However, he did not apply for any of these, seeking instead jobs for which he was not qualified by education and experience or which were not within the limitations placed upon him by his physician. No effort was made to secure any sedentary job or position for which he was equipped.

From our review of the record and the circumstances discussed herein, we conclude that the decision of the Industrial Commission is not supported by credible evidence. *Cf. National Linen Service v. McGuinn,* 3 Va. App. 73, 348 S.E.2d 42 (1986); *DeRoche v. Bangor Roofing & Sheet Metal Company,* 411 A.2d 1026 (Me. 1980); *Jacobsky v. D'Alfonso & Sons, Inc.,* 358 A.2d 511 (Me. 1976).

For the foregoing reasons, we reverse the decision of the Industrial Commission.

*Reversed.*

Hodges, J., concurred.

Barrow, J., dissenting.

Since the evidence, in my opinion, supports the commission's finding of disability, I would affirm the award. The uncontradicted medical evidence showed that Bateman was significantly disabled, and his unsuccessful efforts to find employment illustrated that his remaining capacity to work was of little or no economic value. Weighing the evidence underlying these factual conclusions was the Industrial Commission's function.

Bateman's injury caused a long period of recuperative disability and permanent disability. He was compensated for various periods of temporary total and temporary partial disability between his accident on November 3, 1980 and December 29, 1985. He then received an award for a ten percent permanent partial disability of his right leg. During this time several surgical procedures were performed on his right knee.

He is still unable to return to his regular work. The treating orthopedist advised him "to avoid work involving stooping, crawling, kneeling, and climbing" and to "also avoid prolonged walking or standing on concrete floors . . . ."

Bateman has no education or experience for the sedentary employment to which he is now limited. He graduated from high school but dropped out of a course in automotive mechanics at Thomas Nelson Community College after approximately one quarter of studying. He has worked only as a retail clerk, working for this employer and several others.

Bateman's limited education, experience and physical capacity place him within the category of workers to whom the so called "odd-lot doctrine" applies. These are workers who, "while not all together incapacitated for work, are so handicapped that they will not be employed regularly in any well-known branch of the labor market." 2 A. Larson, *Workmen's Compensation Law* § 57.51(a) (1987). Judge Cardozo once described such a worker as follows:

> [A]n unskilled or common laborer . . . [who] coupled his request for employment with notice that the labor must be light. The applicant imposing such conditions is quickly put aside for more versatile competitors. Business has little patience with the suitor for ease and favor. He is the "odd lot" man, the "nondescript in the labor market." Work, if he gets it, is likely to be casual and intermittent.

*Jordan v. Decorative Co.*, 230 N.Y. 522, 525, 130 N.E. 634, 635-36 (1921) (citations omitted). Although his remaining capacity to work was limited, Bateman attempted to market it. The commission was persuaded that his efforts were credible and identified his "bona fide attempts" to secure employment with at least twelve employers during the six months preceding the hearing before the deputy commissioner. The commission also observed that Bateman tried to market his remaining work capacity as far back as 1984 and said "[i]t can hardly be said upon the record before us that the claimant is malingering."

In the face of this effort by Bateman, the failure of the employer or the insurance carrier to assist him in marketing this limited capacity to work is notable. The employer did not offer employment to Bateman, suggesting its recognition of his severe work limitations. While complaining that Bateman did not seek the assistance of the Virginia Employment Commission, the employer offered no evidence of its attempt to assist him in registering with that agency. Finally, even though the employer retained an employment specialist to examine employment opportunities for

Bateman and offer evidence about them, neither the specialist's assistance nor his findings were offered to Bateman to assist him in his job search.

Since Bateman's efforts to find employment and medical evidence of the extent of his disability were carefully weighed by the commission, its finding of disability should not be disturbed without identifying the commission's misapplication, if any, of the law. The commission had to decide whether Bateman's remaining work capacity was marketable. This Court should not superimpose its judgment for the judgment of the commission without identifying what factors, if any, the commission failed to consider, or considered when it should not have. For these reasons, I would affirm the commission.