COURT OF APPEALS OF VIRGINIA


Present:  Judges Willis, Annunziata and Senior Judge Cole
Argued at Richmond, Virginia


TRACY EUGENE TALBOT

v.   Record No. 1016-95-2            MEMORANDUM OPINION[*] BY
                                      JUDGE MARVIN F. COLE
BLACK INDUSTRIES, INC.                 FEBRUARY 27, 1996
AND
UNITED STATES FIDELITY & GUARANTY COMPANY


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Gary W. Kendall (Michie, Hamlett, Lowry,
            Rasmussen and Tweel, on brief), for
            appellant.

            Robert M. McAdam (Katherine Cabell Londos;
            Wooten & Hart, P.C., on brief), for
            appellees.


     Tracy Eugene Talbot ("claimant") appeals a decision of the

Workers' Compensation Commission denying his June 27, 1994 change

in condition application.  Claimant contends that the commission

erred in (1) refusing to grant his request for a change in

treating physicians; (2) finding that he did not prove that his

April 14, 1994 right knee injury constituted a compensable

consequence of his February 12, 1992 compensable back injury; and

(3) not awarding him temporary total disability benefits on the

ground that he did not adequately market his residual work

capacity after March 29, 1994.  For the following reasons, we

reverse the commission's ruling denying claimant's request for a

--------

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

change in treating physicians and we affirm the commission's decision as to the remaining two issues.

## Background

On February 12, 1992, while working for employer as a foreman, claimant suffered a compensable back injury. Dr. Eric Korsh, an orthopedic surgeon, diagnosed degenerative disc disease at L4-L5 with mild spinal stenosis. On September 7, 1993, Dr. Korsh performed surgery on claimant's back. On December 20, 1993, Dr. Korsh released claimant to return to work, noting that he did not comply with work hardening. On January 13, 1994, Dr. Korsh recommended that claimant continue rehabilitation with Dr. Murray Joiner, Jr., a physical medicine and rehabilitation specialist. Dr. Korsh also noted that "there is nothing further that I can offer him." On January 12, 1994, Dr. Joiner released claimant to return to full unrestricted work. However, on February 10, 1994, claimant returned to Dr. Joiner complaining of lower back pain. As a result, Dr. Joiner restricted claimant from lifting more than seventy-five pounds.

Claimant testified that between February 1994 and April 14, 1994, he experienced episodes of leg numbness, which on two occasions caused his knee to give way and caused him to fall. Claimant contended that he did not tell Dr. Korsh about the leg numbness because Dr. Korsh refused to treat him. On April 14, 1994, claimant's leg went numb and he fell on his right knee while at home. Claimant sought treatment for this knee injury at

the Memorial Hospital of Martinsville emergency room, where Dr. Robert P. Albanese noted that claimant had undergone back surgery, but that, even prior to the surgery, he had trouble with his legs giving out. Dr. Albanese diagnosed a possible torn medial meniscus of the right knee and referred claimant to Dr. Peter Perry, an orthopedist.

Dr. Perry's April 28, 1994 office notes and Attending Physician's Report reflect a history of a right knee injury, which occurred at work a few weeks earlier. On June 7, 1994, Dr. Perry noted that claimant clarified his earlier history by stating that he had fallen at home, not at work. On July 21, 1994, Dr. Perry opined that he did not believe claimant's knee problem was directly related to claimant's back injury. However, Dr. Perry stated that claimant's knee problem might be indirectly related to his back problem, if a giving way episode related to the back injury led to claimant's torn meniscus.

On August 8, 1994, on a friend's recommendation, claimant sought treatment from Dr. Hallett H. Mathews in Richmond, Virginia, a three-hundred mile round trip from claimant's home. On August 22, 1994, Dr. Mathews noted that, if claimant's back and leg symptoms did not improve with conservative treatment, he might be a candidate for further surgery. On October 12, 1994, Dr. Mathews opined that claimant was unable to perform heavy manual labor. Dr. Mathews restricted claimant from lifting more than twenty pounds and advised him to avoid frequent bending,

3

twisting, and sitting for extended periods of time.  Dr. Mathews also stated that claimant could not return to his pre-injury work with employer unless these restrictions applied.

On October 21, 1994, employer notified claimant's counsel that it did not accept Dr. Mathews as the treating physician and offered claimant a new panel of physicians, consisting of Drs. Strong, Crickenberger, and Stevens.  Claimant called Drs. Crickenberger and Stevens, both of whom refused to treat him.  Thereafter, employer substituted Dr. Perry for Dr. Crickenberger.  Claimant agreed to accept Dr. Perry as his treating physician.  However, Dr. Perry declined to accept claimant as a patient, so claimant requested a referral to another doctor.  When Dr. Perry told claimant he should return to Dr. Korsh and obtain a referral to Dr. Mathews, claimant stated that Dr. Korsh would not see him and asked Dr. Perry to refer him to Dr. Mathews.  On December 12, 1994, Dr. Perry wrote that claimant should return to Dr. Mathews since claimant had seen Dr. Mathews before.  Claimant testified that his attorneys were pursuing a medical malpractice action against Dr. Korsh.  However, claimant did not know whether a lawsuit had been filed on his behalf against Dr. Korsh.

Claimant testified that between February 1994 and August 15, 1994, he looked for work and registered with the Virginia Employment Commission ("VEC").  He also stated that he called potential employers between two and four times per week during this time period.  In response to employer's Interrogatory

4

number 4, which was admitted into evidence, claimant provided the names of nine potential employers he contacted between February 12, 1992 and August 15, 1994. Claimant did not set forth the date of the job contacts, the specific jobs, or whether he filled out applications in either his testimony or his interrogatory answer.

## I.  Change in Treating Physicians

The commission denied claimant's request for a change in treating physicians on the ground that he failed to prove that Dr. Korsh's treatment was inadequate or that Dr. Korsh abandoned claimant as a patient.

"Whether a treating physician has released or abandoned his patient most often is determined by the express intent of the physician. Some situations may require analysis of the total circumstances to determine whether discharge, release or abandonment of a patient was intended." Jensen Press v. Ale, 1 Va. App. 153, 157, 336 S.E.2d 522, 524 (1985). Here, the uncontradicted evidence in the record shows that, as of January 13, 1994, Dr. Korsh had nothing further to offer claimant. The evidence also shows that, in October 1994, employer offered claimant a new panel of physicians consisting of Drs. Strong, Stevens, and Crickenberger. Employer's October 1994 offer of a new panel effectively removed Dr. Korsh from treating physician status. Therefore, employer waived its right to insist that claimant return to Dr. Korsh. Moreover, because the panel

5

physicians offered to claimant by employer refused to treat him, employer should have offered claimant another panel of physicians willing and able to treat him. Accordingly, we reverse the commission's ruling requiring claimant to return to Dr. Korsh and remand this case for the commission to enter an order requiring employer to offer claimant a new panel of physicians.

## II. Right Knee Injury

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

"[W]here a causal connection between the initial compensable injury and the subsequent injury is established, the doctrine of compensable consequences extends the coverage of the . . . Act to the subsequent injury because the subsequent injury 'is treated as if it occurred in the course of and arising out of the . . . employment.'" Bartholow Drywall Co. v. Hill, 12 Va. App. 790, 794, 407 S.E.2d 1, 3 (1991) (quoting Leonard v. Arnold, 218 Va. 210, 214, 237 S.E.2d 97, 100 (1977)). Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

The commission found that claimant's right knee injury did not qualify as a compensable consequence of his February 12, 1992 back injury. In so ruling, the commission found that claimant

6

failed to prove that his leg numbness, which he claimed led to his right knee injury, was caused by his compensable back injury.

Although claimant testified that he experienced leg numbness and giving out after his September 1993 surgery, the contemporaneous medical records of Drs. Korsh and Joiner for the time following claimant's surgery did not support his testimony. Moreover, in April 1994, claimant told Dr. Albanese that he had trouble with his legs giving out even before his back surgery. Based upon this evidence, the commission, in its role as fact finder, was entitled to give little weight to Dr. Perry's July 21, 1994 opinion on causation, which was premised upon the leg weakness arising after the back surgery. Finally, the medical records show that claimant first complained of right knee pain on April 3, 1994, eleven days before his alleged fall.

Based upon this record, the commission did not err in ruling that claimant's evidence did not prove a causal relationship between his compensable back injury and his alleged episodes of his leg numbness and his knee giving way. Accordingly, we cannot find as a matter of law that he met his burden of proving a compensable consequence.

### III.  Marketing/Disability

"In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission. . . ."  National Linen Serv. v.

7

McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 32 (1989).  A claimant still has the burden of proving his entitlement to benefits, and to do that he has the burden of proving that he made a reasonable effort to procure suitable work but was unable to market his remaining work capacity.  Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 100 (1987).

The uncontradicted medical evidence proved that Dr. Joiner released claimant to return to light-duty work on February 10, 1994, with a restriction against lifting more than seventy-five pounds.  Based upon claimant's failure to produce the names of potential employers he contacted, the date of such inquiries, the positions inquired about, and the dates of any applications he completed, we cannot find as a matter of law that he met his burden of proving he adequately marketed his residual work capacity after March 29, 1994.

Moreover, claimant's testimony that he applied with the VEC and that he called two to four potential employers per week conflicted with his interrogatory answer, which listed only nine employer contacts between February 12, 1992 and August 15, 1994.  Accordingly, the commission, as fact finder, was entitled to give little weight to claimant's testimony.

For the reasons stated, we reverse the commission's ruling ordering that claimant return to Dr. Korsh.  The commission is directed to enter an order requiring employer to offer claimant a new panel of physicians willing and able to treat him, from which

8

he can select a treating physician.  We affirm the commission's decision as to the remaining two issues.

<u>Affirmed in part,</u>
<u>reversed and remanded in part.</u>