COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick,[*] Judge Elder and
          Senior Judge Duff
Argued at Alexandria, Virginia


BROWN & ROOT, INC. and
 ARGONAUT INSURANCE COMPANY
                                        MEMORANDUM OPINION[**]
v.    Record No. 0580-97-4           BY JUDGE CHARLES H. DUFF
                                          DECEMBER 23, 1997
LUTHER H. RICHARDS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

               Mark D. Crawford (Friedlander, Misler,
               Friedlander, Sloan & Herz, on briefs), for
               appellants.

               Gregory J. Harris (Law Offices of Gregory
               J. Harris, P.C., on brief), for appellee.


     Brown & Root, Inc. and Argonaut Insurance Company

(collectively employer) appeal from a decision of the Virginia

Workers' Compensation Commission (commission) holding that Luther

H. Richards (claimant) was temporarily totally disabled from

January 5, 1995 through the present.  Employer further contends

the commission erred when it found that claimant was marketing

his remaining work capacity.  For the following reasons, we

affirm the commission in part and reverse it in part.

_____

     [*]On November 19, 1997, Judge Fitzpatrick succeeded Judge
Moon as chief judge.

     [**]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

I.

On appeal, we review the evidence in the light most favorable to the party prevailing below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

Claimant sustained a compensable injury to his neck on July 13, 1994.  In a decision ultimately affirmed by this Court, See Brown & Root, Inc. v. Richards, Record No. 1548-95-4 (Va. Ct. App. Dec. 19, 1995), a deputy commissioner found that claimant was entitled to temporary total disability payments from July 20, 1994 through January 5, 1995.  On February 3, 1995, claimant filed an application for change of condition, contending that he continued to be temporarily totally disabled from January 6, 1995 through the present.

In his application, claimant cited to a January 6, 1995 "Evaluation of Disability Status" form completed by Dr. James Smith.  On that form, Dr. Smith checked a box indicating that claimant had "[m]oderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity. (60-70%)."  He also checked boxes indicating that claimant was not totally disabled, but was temporarily unable to work.  Dr. Smith indicated that claimant could probably return to work on March 15, 1995, and wrote that claimant "cannot return to regular duty – hope for light duty – no lifting over 10 lbs. no overhead work."

2

On January 26, 1995, Dr. Smith wrote a note directing claimant to stay out of work for five weeks until follow up. Dr. Smith gave no indication that claimant could perform any light-duty work with restrictions. On March 2, 1995, claimant advised Dr. Smith that "there were no light duty options available to return to work . . . ." Dr. Smith noted, "I . . . feel that his prognosis for return to his previous line of work [as a heavy equipment operator] is tenuous based on his progress to date."

Dr. Smith referred claimant to Dr. Steven Tynes, who first saw claimant on March 30, 1995. Dr. Tynes' notes between March 30, 1995 and February 5, 1996 are silent regarding claimant's ability to return to work. Dr. Tynes' February 5, 1996 report reflects claimant's reported ability to "probably lift up to 25 lbs without any problems." On March 11, 1996, claimant stated that he could drive up to one and a half hours before he began to suffer from paresthesia in his arms. Dr. Tynes wrote of claimant on March 11, 1996, "I have already stated that I do not feel he will ever be able to return to his former job as a heavy equipment operator. [Claimant] has a 5th [sic] grade education. Therefore, his current opportunities for other meaningful employment are quite limited due to his education." (Emphasis added.).

Claimant, who is fifty-two years old, has a fourth grade education and is illiterate, testified extensively regarding

3

efforts he had made toward finding light-duty employment.  When asked by counsel whether Dr. Smith or Dr. Tynes had ever released him to perform light-duty work, claimant replied:  "Yes, sir."

Later, when asked what steps he took after seeing his doctors in February or March 1995, claimant answered, "[w]hen he -- the doctor did say on light-duty, able to do some light-duty work, I did contract [sic] Brown & Root."  On cross-examination, employer asked claimant:  "[Y]ou're not claiming that you're totally disabled, that you can't do anything, right?"  Claimant responded:  "No, sir."  Claimant never testified that, after March 2, 1995, he was unable to perform light-duty work.

John Bullock, a private investigator, conducted surveillance of claimant from March 19 through March 21, 1996.  On all three days he observed claimant at the Horseshoe Bay Marina.  A videotape taken by Bullock shows claimant hammering and transporting bags of concrete in a wheel barrow.  The videotape also shows claimant putting on a utility belt upon arriving at the marina.

Based on Dr. Smith's January 26, 1995 and March 2, 1995 notes, the deputy commissioner found that claimant was totally disabled between those dates.  The deputy commissioner found, however, that there was no medical evidence that claimant was totally disabled between January 6 and January 26, 1995, or after March 2, 1995.  The deputy commissioner noted that "[u]pon considering the testimony of the claimant, in conjunction with

4

the medical evidence and the videotape viewed at the hearing, the Commission does not find the claimant to be a credible witness." The deputy commissioner further found that claimant was not sufficiently marketing his remaining work capability.

The full commission reversed the deputy commissioner's holding that claimant was not totally disabled between January 6 and January 26, or after March 2, 1995, finding "upon Review that the claimant's evidence, taken as a whole, establishes a change in condition and total disability commencing January 6, 1995."[1] The commission focused on the fact that none of the medical records specifically released claimant to light-duty work. It further concluded that claimant's efforts to market what remaining work capacity he possessed were reasonable.

## II.

"General principles of workman's compensation law provide that '[i]n an application for review of any award on the ground of change in condition, the burden is on the party alleging such change to prove his allegations by a preponderance of the evidence.'" Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (citation omitted). Unless we can say as a matter of law that claimant's evidence failed to meet his burden of proving temporary total disability beginning

---

[1] We find no support for employer's contention that the commission impermissibly shifted the burden of proof to employer with regard to the time period of January 6 through March 2, 1995. Further, we find it unnecessary to address this question as it pertains to the period of time after March 2, 1995.

5

January 6, 1995, the commission's findings are conclusive and binding upon us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

To establish entitlement to total disability benefits, a claimant must prove that he is totally incapacitated from performing any work, or that he was unsuccessful, after expending reasonable effort, in securing selective employment.  See Big D Quality Homebuilders v. Hamilton, 228 Va. 378, 382, 322 S.E.2d 839, 841 (1984).  "'No injury or occupational disease is compensable as a total incapacity until it is proven that the injury or disease has effectually closed the labor market to the employee.  A showing that he may not return to his former occupation is not such proof.'"  Pocahontas Fuel Co. v. Barbour, 201 Va. 682, 684-85, 112 S.E.2d 904, 906 (1960) (quoting approvingly from opinion of dissenting commissioner).  In determining whether a claimant is capable of performing some work, we look at "all of the facts and surrounding circumstances.  This would necessarily include consideration of the claimant's perception of his condition, his abilities, and his employability, and of the basis for that perception."  Ridenhour v. City of Newport News, 12 Va. App. 415, 418, 404 S.E.2d 89, 90-91 (1991) (rejecting contention that a claimant had no duty to seek selective employment unless informed by his physician that he could return to light-duty work).

Credible evidence supports the commission's finding that

6

claimant was totally disabled from January 26, 1995 through March 2, 1995. The January 26, 1995 note states that claimant is unable to work and gives no indication that claimant is able to perform light-duty work. However, no credible evidence supports a finding of total disability from January 6 through January 25, 1995, and subsequent to March 2, 1995.[2]

The January 6, 1995 evaluation form clearly states that claimant was not totally disabled, that his level of impairment consisted of "[m]oderate limitation of functional capacity," and that he was capable of sedentary work. This evaluation form, without more, does not constitute credible evidence sufficient to meet claimant's burden of proving total disability between January 6 and January 25, 1995.

With regard to the time period subsequent to March 2, 1995, the commission seemingly ignored the fact that, when asked whether his physicians had released him to return to light-duty work in February or March 1995, claimant stated unequivocally: "Yes, sir." See Pence Nissan Oldsmobile v. Oliver, 20 Va. App. 314, 318, 456 S.E.2d 541, 543 (1995) (reaffirming applicability to workers' compensation proceedings of Massie v. Firmstone, 134 Va. 450, 462, 114 S.E. 652, 656 (1922), that a party is bound by his testimony at trial). Claimant admitted on cross-examination

---

[2]Under the circumstances, we find it unnecessary to address employer's question regarding whether the commission impermissibly disregarded the deputy commissioner's credibility findings.

that he was not totally disabled,[3] and at no point claimed that he was unable to perform light-duty work. The videotape of claimant's activities at the marina reinforces employer's position that claimant was capable of performing light-duty work.

Likewise, claimant's medical records fail to prove total disability subsequent to March 2. At no point after March 2, 1995 did either of claimant's physicians state that claimant was unable to perform any type of work. Rather, the records merely state that claimant would not be able to return to his regular employment as a heavy equipment operator. When the medical records are considered in conjunction with claimant's testimony, it is readily apparent that claimant was capable of light-duty work subsequent to March 2, 1995. Accordingly, there is insufficient credible evidence in the record to support the commission's finding that claimant was totally disabled after March 2, 1995.

### III.

Claimant testified that he contacted six prospective employers between January 1995 and March 1996. He sought light-duty work from employer in approximately January 1995. Between January and March 1995, and again in March 1996, he sought employment with Austin Engineering. He contacted

---

[3]While claimant contends that the question was vague and the response subject to interpretation, we do not find it so. Moreover, claimant failed, on re-direct, to clarify this response.

Untermeyer Tire in February 1995 and March 1996, Nash Builders in March 1995, Cottonwood Shores between February and March 1995, and Horseshoe Bay Marina in the summer of 1995 and on March 15, 1996. Both Untermeyer Tire and Horseshoe Bay Marina advised appellant the first time he sought employment with them that he was not eligible for employment there because of his physical condition. He contacted employers not only in his hometown of Marble Falls, Texas (population approximately 16,000), but also in Austin, Texas.[4] Claimant testified that his fiancee checked the local weekly newspaper for jobs for him.

"In order to receive benefits under the Workers' Compensation Act, a claimant who has been injured in a job-related accident must market his remaining capacity to work." Herbert Bros., Inc. v. Jenkins, 14 Va. App. 715, 717, 419 S.E.2d 283, 284 (1992). "[S]ince the hearing in this case was on [claimant's] application, [he] had the burden of proving that he made a reasonable effort to find suitable employment." National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989).

> [I]n deciding whether a partially
> disabled employee has made reasonable effort
> to find suitable employment commensurate with
> his abilities, the commission should consider
> such factors as: (1) the nature and extent of
> [the] employee's disability; (2) the
> employee's training, age, experience, and
> education; (3) the nature and extent of [the]

_____

[4]Claimant testified that Austin is approximately fifty miles and a one-hour drive from his residence. Both Drs. Smith and Tynes are located in Austin.

> employee's job search; (4) the availability
> of jobs in the area suitable for the
> employee, considering his disability; and (6)
> any other matter affecting [the] employee's
> capacity to find suitable employment.

Id. at 272, 380 S.E.2d at 34 (footnotes omitted). See Bateman, 4 Va. App. at 466-67, 359 S.E.2d at 103 (finding insufficient marketing of remaining work capacity where, over a period of six months, the claimant contacted thirteen prospective employers, submitted just five job applications, and failed to register with the unemployment office). Cf. Jenkins, 14 Va. App. at 717, 419 S.E.2d at 284 (finding adequate marketing where, over a period of several months, claimant, who was forty-nine years old with just seven years of formal education, contacted thirty prospective employers and submitted ten application forms).

With regard to the period of time between January 6 and January 25, 1995, Dr. Smith indicated on January 6 that claimant was capable of performing "clerical/administrative" employment. Thus, claimant's illiteracy and lack of education effectively precluded him from procuring selective employment. Accordingly, credible evidence supports the commission's finding that claimant was sufficiently marketing his remaining work capacity during that period of time.

Claimant was not adequately marketing his remaining work capacity subsequent to March 2, 1995. He contacted a total of six employers between January 6, 1995 and April 18, 1996, and there is no evidence that he made any job contacts between April

10

1995 through February 1996.  Claimant returned to at least two of these employers after they previously told him that he would not be hired because of his physical condition.  Although his fiancee checked the local newspaper for work for claimant, there is no evidence that claimant examined any newspapers with larger circulations, such as those published in nearby Austin, Texas.  Furthermore, there is no evidence that he registered with his local unemployment office, or that he otherwise sought any retraining assistance.

We recognize that claimant is handicapped by his illiteracy and lack of formal education; nevertheless, these factors would not prevent him from more aggressively pursuing low-skilled, light-duty employment both in his hometown and in the Austin area.  Accordingly, we hold that, as a matter of law, the commission erred in finding that claimant adequately marketed his remaining work capacity beginning March 2, 1995.

<u>Affirmed in part,</u>
<u>reversed in part.</u>

11