COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


RECYCLING CENTER, INC. AND
 RELIANCE INSURANCE COMPANY

                                    MEMORANDUM OPINION*
v.    Record No. 1074-00-4              PER CURIAM
                                      OCTOBER 17, 2000
VITELIO MARTINEZ


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            (S. Vernon Priddy III; Jeffrey W. Saunders;
            Sands, Anderson, Marks & Miller, on brief),
            for appellants.

            (Stephen A. Bou; Bou & Bou, on brief), for
            appellee.


      Recycling Center, Inc. and its insurer (hereinafter

referred to as "employer") contend that the Workers'

Compensation Commission erred in finding that employer failed to

prove that Vitelio Martinez (claimant) was released to return to

full-duty employment as of November 19, 1998.  Upon reviewing

the record and briefs of the parties, we conclude that this

appeal is without merit.  Accordingly, we summarily affirm the

commission's decision.  See Rule 5A:27.

      "General principles of workman's compensation law provide

that '[i]n an application for review of any award on the ground of

change in condition, the burden is on the party alleging such

―――――――――――――――――
      * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

change to prove his allegations by a preponderance of the evidence.'"  Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 101 (1987) (quoting Pilot Freight Carriers, Inc. v. Reeves, 1 Va. App. 435, 438-39, 339 S.E.2d 570, 572 (1986)).  Unless we can say as a matter of law that employer's evidence sustained its burden of proof, the commission's findings are binding and conclusive upon us.  See Tomko v. Michael's Plastering. Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

On appeal, we view the evidence in the light most favorable to the prevailing party below.  See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).

So viewed, the evidence proved that on June 2, 1998, claimant was hit by a truck in the course of his employment, causing him to sustain severe facial lacerations, a cervical fracture at the C4-5 level, multiple transverse fractures at the L3-4 level, and an AC joint separation of the left shoulder. Employer accepted the claim as compensable and paid compensation benefits pursuant to an award until March 10, 1999.

On March 2, 1999, employer filed an application seeking to terminate claimant's benefits on the ground that he had been released to return to his pre-injury work as of February 9, 1999 by Dr. Adel Kebaish.  Employer amended its application at the September 14, 1999 hearing to allege that claimant had also been released to return to his pre-injury work as of November 19, 1998 by Dr. Kebaish.

-

On September 3, 1998, Dr. Kebaish, claimant's treating orthopedic surgeon, released claimant to return to work on a modified schedule of twenty hours per week, with no lifting of more than twenty pounds, for four weeks, beginning September 15, 1998.  On September 10, 1998, Dr. Kebaish noted that claimant has a left AC joint separation in his shoulder.  Dr. Kebaish continued claimant on light duty.

On October 22, 1998, Dr. Kebaish opined that claimant could work twenty hours per week for three weeks, then thirty hours per week for three weeks, and then full time.

On November 19, 1998, Dr. Kebaish noted that claimant still complained about left shoulder symptoms.  However, Dr. Kebaish opined as follows:

> [C]onsidering the description of [claimant's] job, I think he is capable to return to regular duty with minimal modification.  He does not believe so; accordingly, I referred him for a second opinion to Dr. Seung Paik regarding his left shoulder.  Patient should be seen here in four weeks for final f/u.

As an addendum to his November 19, 1998 office notes, Dr. Kebaish noted that claimant's rehabilitation nurse called him and stated that claimant's "lawyer is quite unhappy about my sending him back to work, and requested some clarification." Dr. Kebaish wrote that he "would be happy to refer [claimant] to Dr. Paik."

On November 30, 1998, Dr. Paik examined claimant. Dr. Paik noted that claimant came to see him "for an orthopedic consultation with a case manager to discuss his present time condition and the possibility of his returning to work." Dr. Paik prescribed outpatient physical therapy for one month and strength exercises. Dr. Paik opined that claimant should be restricted from full duty with lifting of no more than twenty pounds. On December 30, 1998, Dr. Paik noted that he discussed AC joint surgery with claimant. At that time, Dr. Paik continued claimant's previous restrictions for one month.

On January 29, 1999, Dr. Paik noted that claimant still suffered from the left shoulder problem and pain in his neck. Dr. Paik noted that "his returning to his previous duties at work is pretty much guarded." Dr. Paik restricted claimant to occasional lifting up to twenty pounds and frequent lifting up to ten pounds.

On March 24, 1999, Dr. Paik noted that claimant still had soreness in his neck and left shoulder and that he still had "pain [in his left shoulder] with pressure when doing any heavy lifting." Dr. Paik opined as follows:

> [Claimant] should not return to work at the present time, which requires running and jumping. It also requires him picking up heavy trash bags. His returning to his regular duties at work is pretty much guarded at the present time. He should find a job that requires less lifting and stress.

-

On February 9, 1999, Dr. Kebaish signed off on a job description for claimant provided to him by employer. The job description indicated that claimant was required to frequently lift and carry between fifteen and twenty-five pounds.

Claimant testified that his job required that he frequently lift between thirty and forty-pound recycling buckets. Claimant stated that he could not perform this type of lifting, because it caused him neck and left shoulder pain. Claimant stated that he attempted to return to work on two days in November 1998, but he could not continue due to the pain caused by lifting the heavy recycling buckets. Claimant also testified that his job required lifting above his shoulders, which he could not do without pain.

Based upon claimant's testimony and Dr. Kebaish's opinions, the commission ruled that employer failed to prove that claimant was capable of performing his pre-injury work as of November 19, 1998. In light of claimant's testimony regarding his actual job duties, his failed attempt to return to work in November 1998, and Dr. Paik's opinions, the commission was entitled to give little probative weight to Dr. Kebaish's November 19, 1998 work release and his February 9, 1999 approval of the job description.

We find no merit in employer's argument that the commission erred in treating Dr. Paik's opinions as a defense to employer's application. As Dr. Paik noted, the referral to him was to

-

address the need for surgical intervention with regard to the AC joint separation and to discuss the possibility of claimant returning to work. Dr. Paik's treatment and opinions rendered close in time to Dr. Kebaish's treatment and opinions were properly before the commission and constituted evidence which conflicted with Dr. Kebaish's opinion regarding claimant's ability to return to his pre-injury employment as of November 19, 1998. The sole issue before the commission concerned claimant's ability to return to full-duty employment. Employer bore the burden of proof on this issue, and the commission, as fact finder, was entitled to consider conflicting evidence in ruling upon employer's application.

Based upon this record, we cannot find as a matter of law that employer's evidence sustained its burden of proof.

For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>