COURT OF APPEALS OF VIRGINIA


Present:    Judges Petty, Beales and Senior Judge Coleman
Argued at Richmond, Virginia


JAMES D. CHANEY

v.        Record No. 1491-10-2

HONEYWELL INTERNATIONAL, INC. AND
  INDEMNITY INSURANCE COMPANY
  OF NORTH AMERICA

MEMORANDUM OPINION[*] BY
JUDGE SAM W. COLEMAN III
MARCH 1, 2011


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Seth R. Carroll (Geoff McDonald & Associates, P.C., on brief), for appellant.

Kathryn Spruill Lingle (Midkiff, Muncie & Ross, P.C., on brief), for appellees.


James D. Chaney (claimant) appeals a decision of the Workers' Compensation

Commission (commission) finding he was not entitled to temporary partial disability benefits

from August 30, 2006, through the hearing date, and continuing, because he failed to reasonably

market his residual work capacity.  For the following reasons, we affirm the commission's

decision.

BACKGROUND

"On appeal, we view the evidence in the light most favorable to the prevailing party

before the commission."  Central Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield, 42

Va. App. 264, 269, 590 S.E.2d 631, 634 (2004).  Whether an employee seeking disability

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

benefits has made a reasonable effort to market his residual work capacity is a factual

determination. Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 579 (2008).

> "Factual findings by the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993). The commission's findings, if supported by credible evidence or reasonable inferences drawn from the evidence, will not be disturbed upon review, even though the record may contain evidence to support a contrary finding.

Estate of Kiser v. Pulaski Furniture Co., 41 Va. App. 293, 298, 584 S.E.2d 464, 467 (2003)

(citation omitted).

So viewed, the evidence proved claimant sustained a compensable injury to his right arm

on August 30, 2006, while working as a senior lab technician for Honeywell International, Inc.

(employer). He returned to work in a light-duty capacity on a forty-hour work week the day after

he was injured. On July 16, 2007, the commission determined claimant sustained a twelve

percent permanency rating for loss of use to his right arm.

On October 15, 2008, claimant requested his claim be returned to the commission's

hearing docket to resolve a dispute regarding his claim for temporary partial disability benefits

based upon the differential between his pre-injury and post-injury wages beginning August 30,

2006, through the present, and continuing. Specifically, claimant argued that because of his

work-related injury, he was incapable of performing most of the duties required to be eligible to

work in the department from which he received most of his overtime before he was injured.[1]

---

[1] Claimant testified "although he was physically and technically able to get overtime by doing various activities in other departments such as moving boxes, cutting grass, janitorial work or banding boxes, the majority of the overtime work at Honeywell was available in the Spectra department." Despite a functional capacity evaluation (FCE) indicating claimant could not work in the Spectra department, Robert Crumpler, a Human Resources Manager for employer, testified claimant ignored his work restrictions and worked overtime in the Spectra department a few times after the accident.

After receiving testimony from claimant and employer's representatives, and relying on the Supreme Court's holding in Favinger, the deputy commissioner denied claimant's change-in-condition claim, finding he failed to adequately market his residual work capacity. The full commission affirmed the deputy commissioner's ruling. This appeal followed.

ANALYSIS

"In a claim for temporary partial disability, the employee '[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity.'" Favinger, 275 Va. at 89, 654 S.E.2d at 578 (quoting Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985)) (alterations in original).

> There are no fixed guidelines for determining what constitutes a "reasonable effort" by an employee to market residual work capacity. An employee must "exercise reasonable diligence in seeking employment" and the reasonableness of an employee's effort will be determined on a case by case basis, taking into account "all of the facts and surrounding circumstances." Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). Some of the criteria, however, that should be considered include:
>
>> (1) the nature and extent of [the] employee's disability;
>> (2) the employee's training, age, experience, and education;
>> (3) the nature and extent of [the] employee's job search;
>> (4) the employee's intent in conducting his job search;
>> (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.
>
> National Linen Service [v. McGuinn], 8 Va. App. [267,] 272, 380 S.E.2d [31,] 34 [(1989)] (footnotes omitted).
>
> In sum, an employee "must present some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition and has failed to find a job, either due to his injury or because no such work was available in the community." Id. at 271, 380 S.E.2d at 34.

Id. at 89-90, 654 S.E.2d at 579 (citations omitted); see also CVS #1549/ CVS of Virginia, Inc. v. Plunkett, 57 Va. App. 373, 702 S.E.2d 578 (2010) (holding Favinger required a

- 3 -

seventy-seven-year-old employee make a reasonable effort to market her residual work capacity despite her claim she could not work more than twenty hours per week because she (1) cared for a great-grandchild and (2) could not drive at night because of vision problems).

The facts of this case are similar to those in Favinger. Favinger received compensation for a work-related injury and returned to light-duty work at a forty-hour work week at his pre-injury wage. Favinger, 275 Va. at 87, 654 S.E.2d at 577. Prior to his injury, Favinger worked in a body shop where he routinely worked fifty-hour weeks and his job required lifting up to twenty-five pounds; his light-duty work consisted of office work and some "containment work" in the body shop. Id. at 85, 91, 654 S.E.2d at 576, 579. Favinger filed a change of condition application with the commission alleging entitlement to temporary partial disability benefits for various periods of time, claiming he earned less performing light-duty work than he had earned in his pre-injury job because he was no longer earning overtime from Ford Motor Company (Ford).

The evidence established Favinger accepted overtime work from Ford when it was available, but made no effort to market his residual work capacity by obtaining employment from other sources in order to mitigate his wage loss. As claimant argues here, Favinger contended that it would have been unreasonable for him to have accepted part-time employment elsewhere at a significantly lower pay rate rather than to be available and willing to accept overtime work with his employer and, furthermore, to accept such lower paying employment would not be reasonable in that he would no longer be available to accept overtime when offered. Rejecting Favinger's arguments, the Supreme Court concluded Favinger had not proven available jobs within his residual work capacity would have interfered with his full-time employment with Ford or his ability to accept overtime work when it was offered by his employer. Holding that these situations did not relieve Favinger of his duty to market his

residual work capacity in order to mitigate his overtime wage loss, the Supreme Court noted Favinger had made no effort to market his residual work capacity. Id. at 91, 654 S.E.2d at 579.

Here, claimant was forty-six years old and had been working with employer for over twenty years when he was injured. Before he was injured, claimant also worked approximately sixteen hours of overtime each week with employer to increase his earnings. Claimant testified from the time of his injury through March 27, 2007, he worked in the fiber test lab, but his right arm was in a cast, and there was not much he could do with only one arm. He stated for this period, he did not seek overtime from employer because he did not feel it was right to ask for overtime when he was already being paid his regular wage based on a forty-hour work week to do nothing. After March 27, 2007, much like Favinger, claimant accepted overtime hours from employer when such hours were made available to him.

Claimant makes two arguments on appeal. First, he asserts that because he has worked for employer for twenty-three years and has the potential to make an hourly overtime wage of $35.70, "[i]t would have been unreasonable . . . to accept work at a lower rate rather than to make himself available for overtime with [e]mployer at a much higher rate . . . ." Next, claimant argues that unlike Favinger, he made efforts to market his residual work capacity outside of making himself available for overtime shifts with employer because he also looked for jobs in newspapers and on the Internet.

We have considered claimant's arguments and cannot conclude either position justifies reversing the commission's factual finding that claimant's efforts to market his residual work capacity were not reasonable. Although claimant argues it would have been unreasonable for him to accept a part-time position earning significantly less than he could earn working overtime with employer, he also conceded he was unable to perform the duties required to work in

employer's Spectra department which offered the greatest opportunity for overtime hours.[2] Therefore, he argues that rather than take proactive measures to market his residual work capacity with other employers, it was reasonable for him to wait for opportunities to perform overtime work with his current employer when he knew those opportunities for overtime had been greatly diminished. Further, claimant admitted that he checked the Internet and newspapers, but failed to make contact with any employers to apply for any jobs, arguing he was unable to do so because of his work restrictions and because "[t]hose part-time jobs are weird hours or all weekends." Because claimant failed to apply for any jobs or even make contact with any potential employers, we find his argument that the facts of his case are distinguishable from and not controlled by Favinger to be without merit, and we find his argument that the commission applied an incorrect standard in determining his efforts to market his residual work capacity were insufficient to be without merit, as well. We also find his argument that obtaining a part-time position with another employer would have interfered with his full-time or overtime opportunities with employer to be premature and unpersuasive.

Acknowledging the fact-specific nature of determining whether a claimant has exercised reasonable diligence in marketing his residual work capacity, we cannot conclude under these circumstances the commission erred in concluding claimant failed to meet his burden of proof in demonstrating he made reasonable efforts to adequately market his residual work capacity and in denying temporary partial disability benefits. Accordingly, we affirm the decision of the commission.

Affirmed.

---

[2] Further, Crumpler testified that due to changes in attendance policies and the decreased demand for products, the need for overtime had been reduced from thirty to thirty-five percent in 2006 to eight percent in 2009.