COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bray and Senior Judge Hodges
Argued at Norfolk, Virginia


FORD MOTOR COMPANY
                                              OPINION BY
v.  Record No. 0821-97-1          JUDGE JAMES W. BENTON, JR.
                                         DECEMBER 23, 1997
LARRY I. HUNT


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Barry Dorans (Samuel W. Meekins, Jr.;
            Wolcott, Rivers, Wheary, Basnight & Kelly,
            P.C., on briefs), for appellant.

            Matthew H. Kraft (Betty M. Tharrington;
            Rutter & Montagna, L.L.P., on brief), for
            appellee.


    Ford Motor Company appeals from the commission's award of
disability benefits to Larry I. Hunt.  Ford argues that Hunt's
activity restrictions were unrelated to his compensable injury,
that the commission improperly applied the "two causes" rule, and
that Hunt failed to adequately market his residual work capacity.
 We affirm the commission's award.

                               I.

    Hunt suffered an injury to his right knee while working in a
Ford assembly plant.  He was treated by Dr. Sheldon Cohn, who
placed Hunt on work restrictions, including no crawling,
squatting, or lifting over thirty pounds.  When Ford accepted the
claim as compensable, the commission awarded Hunt benefits from
March 30, 1993 until May 16, 1993.

    Hunt returned to work at Ford in a light duty capacity and

continued to experience pain in his knee for several months. In October 1993, Dr. Cohn performed an "arthroscopic partial medial meniscectomy and open lateral release of [Hunt's] right knee" and reported that Hunt was unable to work. On February 25, 1994, Dr. Cohn released Hunt for limited duty and noted that Hunt was "not to squat, crawl, or climb." In March and April, Hunt participated in a work-hardening program which also recommended limits "on prolonged standing/walking." In a report dated April 8, 1994, Dr. Cohn "released [Hunt] with permanent work restrictions of limited squatting, climbing, crawling, and not to stand over four hours at a time." Several weeks later, Hunt returned to Dr. Cohn complaining of pain. Dr. Cohn gave him injections and removed him from work until April 27. When Hunt returned to work, Dr. Cohn continued his work restrictions.

In July, Dr. Cohn noted that Hunt was experiencing pain while at work and removed him from work until August. In a report dated August 1994, Dr. Cohn again noted that Hunt was not to stand or walk for prolonged periods; was not to stoop, climb, squat, crawl, or kneel; and could not carry heavy materials. However, after several weeks, Dr. Cohn removed the restrictions on prolonged standing and walking and noted that "otherwise, his work restrictions are the same."

When Hunt returned to work in a modified light duty capacity, he drove a forklift for three months until Ford moved the job to another plant. Hunt then drove a forklift for two

weeks until he was taken off that job because of Ford's seniority policy.

Hunt returned to Dr. Cohn on April 5, 1995, complaining of swelling in the right knee. Dr. Cohn diagnosed Hunt with arthrosis of the right knee and stated, "I do not believe his present condition is related to his previous work related injury."

Ford had no positions within Hunt's restrictions and released Hunt in December 1995. In a December 12, 1995 letter written in response to Ford's request for information regarding Hunt's restrictions, Dr. Cohn stated that, although Hunt's work restrictions barred squatting, crawling, or climbing, "[a]ny further restrictions, which would include the walking and standing restrictions, would be due to arthrosis of his knee, not related to a work injury." A month later, Dr. Cohn noted:

> At this time, I will continue his permanent
> work restrictions of no squatting, crawling,
> or climbing. These are work related. At
> this time, I will make his nonwork related
> restrictions, which is mainly for arthritis,
> of not to stand over 30 minutes at one time
> with 10 minute breaks in-between.

Hunt filed an application alleging a change in his condition due to temporary total disability as of December 6, 1995. At the evidentiary hearing, Hunt testified that he did not have arthritis in his right knee prior to his 1993 work injury or the surgery that was performed on his knee. He also testified that he did not have arthritis at any place except in his injured

knee.  In addition, the evidence at the hearing proved that Hunt sought a second opinion from Dr. Michael T. Longstreet on May 28, 1996.  Dr. Longstreet opined that the knee injury was not arthritis and that the injury to Hunt's knee was work-related.

The deputy commissioner ruled that Hunt's current partial disability was the result of two causes, one work-related and one non-work-related.  Applying the "two causes" rule, the deputy commissioner ruled that Ford was liable for the entire resulting disability.  The deputy commissioner also found, however, that Hunt failed to adequately market his residual capacity and, therefore, denied Hunt any benefits.

Hunt and Ford each requested review by the commission.  The commission applied the "two causes" rule and found that the evidence sufficiently established that Hunt's work injury was a contributing factor to the disability because the standing and walking restrictions were partly caused by Hunt's work-related injury.  In holding that the restrictions were not exclusively caused by the arthritis condition, the commission cited Dr. Cohn's January 23, 1996 letter and stated that "[i]f the claimant's restrictions result 'mainly' from his arthritis, some portion of it must result from his industrial injury."  The commission also relied on the proof that the two injuries were to the same body member, the right knee.  In addition, the commission upheld the deputy commissioner's finding that Hunt failed to market his residual capacity and was not entitled to

- 4 -

benefits from December 1995 to April 28, 1996.  The commission found, however, that Hunt was entitled to temporary partial disability benefits beginning on April 29, 1996 when he found employment within his residual capacity.

## II.

The standard of our review of the commission's findings of fact is well established.

> We do not retry the facts before the Commission nor do we review the weight, preponderance of the evidence, or the credibility of witnesses.  If there is evidence or reasonable inference that can be drawn from the evidence to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary findings of fact.

Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983).  The commission's interpretation of the medical evidence is a finding of fact.  See Ohio Valley Constr. Co. v. Jackson, 230 Va. 56, 59, 334 S.E.2d 554, 556 (1985).

Viewed in the light most favorable to Hunt, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990), the evidence proved that in 1993 and in 1994, Dr. Cohn limited Hunt from stooping, climbing, squatting, crawling, kneeling, carrying heavy objects, prolonged standing, and prolonged walking.  All of those restrictions were caused by Hunt's work-related injury.  In August of 1994, Dr. Cohn removed the restrictions on prolonged walking and standing.  However, he noted that Hunt still had "permanent work restrictions of no

- 5 -

squatting, crawling, or climbing," which flowed from his work-related injury.

In 1995, Dr. Cohn also noted that Hunt then had a restriction on his standing "which is mainly from arthritis." Interpreting Dr. Cohn's explanation of the restrictions, the commission found that because Hunt's standing restriction in 1995 was not based solely on his arthritis, a portion of that restriction resulted from Hunt's work-related injury, which was the only other source of his knee disability. Credible evidence supports that factual finding. The commission's interpretation of Dr. Cohn's report is based on the reasonable inference that Dr. Cohn understood that "mainly" means "in the principal respect" or "for the most part." Webster's Third New International Dictionary 1362 (Unabridged, 1965).

The principle is well established that when medical evidence is not conclusive, it "is subject to the commission's consideration and weighing." Hungerford Mechanical Corp. v. Hobson, 11 Va. App. 675, 677, 401 S.E.2d 213, 215 (1991). As the trier of fact, the commission is also free to consider "[t]he testimony of a claimant . . . in determining causation, especially where the medical testimony is inconclusive." Dollar General Store v. Cridlin, 22 Va. App. 171, 176, 468 S.E.2d 152, 154 (1996). Although the evidence proved that in 1995 the restriction against standing for prolonged periods was "mainly" based on Hunt's arthritis, which Dr. Cohn deemed a

- 6 -

non-work-condition, the evidence also proved that on several occasions prior to 1995 Dr. Cohn barred Hunt from "prolonged standing/walking" because of his work-related injury. The commission's interpretation of Dr. Cohn's 1995 report was made within the context of Hunt's medical history and Hunt's testimony that, apart from his work-related injury and his arthritis, he had no other physical ailments that contributed to the problems with his knee. Credible evidence proved that Hunt's only other disability to that same knee was a work-related injury. Accordingly, we hold that the commission's finding is supported by credible evidence.

III.

The principle is well established that "where a disability has two causes: one related to the employment and one unrelated [to the employment] . . . full benefits will be allowed." Bergmann v. L&W Drywall, 222 Va. 30, 32, 278 S.E.2d 801, 803 (1981). The evidence proved that Hunt suffered disability in the knee from both a work-related injury and a non-work-related condition. Thus, the evidence proved Hunt's disability to the knee resulted from two causes. Accordingly, we affirm the commission's finding regarding Hunt's disability.

IV.

Hunt testified regarding the job search he conducted after being released from Ford. He spoke with Ford and his union representatives several times, he contacted the employers listed

- 7 -

on his Work Search Contacts Record, he contacted potential employers verbally, and he checked the newspaper employment advertisements.  Eventually, on April 29, 1996, Hunt obtained a part-time position as a painter's helper earning an average of $125 per week.  Prior to his release, Hunt had been earning approximately $614 per week at Ford.

The evidence proved that in April 1996, Hunt obtained employment that he could perform consistent with his restrictions.  The commission made the following findings regarding Hunt's efforts to locate that employment:

> In April 1996, he found a part-time job with J.M. Jolly, painting contractor, earning $125 per week.  The claimant, who is 49 years old, has worked for his preinjury employer in an assembly plant for 16 years.  There is no information in the record concerning his education or training.  The claimant indicated that he looked in the want ads but could not perform the required job duties due to his restrictions. . . .  Considering the evidence before us concerning the nature and extent of his disability and his experience, we find that he has found suitable employment within his residual capacity.

Unlike the facts in National Linen Service v. McGuinn, 8 Va. App. 267, 380 S.E.2d 31 (1989), where the employee "did not attempt to find any other job," id. at 270, 380 S.E.2d at 33, the evidence proved, and the commission found, that Hunt sought other employment.  Because the record contains credible evidence to support the commission's findings, we affirm the ruling that Hunt made reasonable efforts to market his residual work capacity.

For these reasons, we affirm the commission's award.

<u>Affirmed</u>.