COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


MARK S. ALLEN

                                            OPINION BY
v.    Record No. 1758-02-1      JUDGE ROSEMARIE ANNUNZIATA
                                          MARCH 25, 2003
SOUTHERN COMMERCIAL REPAIR, INC. AND
 SELECTIVE INSURANCE COMPANY OF AMERICA


         FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Matthew H. Kraft (Inman & Stickler, P.L.C.,
             on brief), for appellant.

             (Robert G. Harrington; Robert Harrington &
             Associates, on brief), for appellees.
             Appellees submitting on brief.


     Mark S. Allen, appellant, appeals the decision of the

Workers' Compensation Commission, which found that he was not

entitled to temporary partial disability benefits because he

failed to reasonably market his residual wage earning capacity.

For the reasons that follow, we affirm.

     The material facts underlying this appeal are not in

dispute.  Allen suffered an injury by accident on March 23, 1999

while employed by Southern Commercial Repair, Inc. ("Southern"),

where he worked as an electrician.  His job required him to lift

heavy items, climb ladders and scaffolding, run conduit wire,

and perform additional tasks associated with general contracting

electrical work.  Allen has been employed in the electrical

business since approximately age 16; he is a master electrician, has his General Equivalency Degree and holds contractor and tradesmen licenses.

On July 31, 2000, the commission determined that Allen had established a compensable injury by accident and awarded him disability benefits through June 7, 1999. After the commission awarded benefits, Allen was terminated from his position with Southern, ostensibly due to the limitations imposed by his injury.

Following his termination, Allen worked for two other employers, but was laid off by each. He stated that his inability to physically perform the work was the basis for the lay-offs. Thereafter, Allen started a new company, Allen's Electric Service of Virginia, Inc. He has operated the company on a continuing basis since March 28, 2000. The company provides electrical services and repair. After Allen started his own company, he ended his attempts to seek employment elsewhere.

Allen made a concerted effort to establish a viable electrical services company. He placed a listing in the local yellow pages and created a flier and business cards for advertising purposes. He submitted 173 job proposals to prospective clients from approximately March 21, 2000 through

April 25, 2001.[1]  A review of the proposals reveals that the jobs at issue ranged extensively in size and complexity and took varying amounts of time to perform.  However, as of September 13, 2000, Allen was restricted to a 25-pound lifting limitation and was prohibited from engaging in heavy pulling and carrying.  On October 2, 2000, his physician characterized his limitations as "permanent," stating in his report that "[Allen] is going to need to be on permanent restrictions as far as bending and lifting are concerned.  He should not do any heavy labor type work . . . ."  The restrictions precluded proposals for certain electrical services jobs and made it necessary to pay other individuals to perform the more physically taxing jobs that Allen could no longer perform.

Allen's tax records indicate that, from March 28, 2000 to December 31, 2000, his company earned $29,777 in gross receipts.

---

[1] The job proposals are broken into four periods, March 21, 2000 through August 4, 2000, August 8, 2000 through October 19, 2000, October 20, 2000 through January 19, 2001, and January 5, 2001 through April 25, 2001.  For the first period, comprised of 19.57 weeks, 46 proposals were submitted (26 of which were marked "paid," 7 of which were marked "didn't get," and 13 of which were unmarked).  For the second period, comprised of 10.43 weeks, 47 proposals were submitted (23 of which were marked "paid," 19 of which were marked "didn't get," and 5 of which were unmarked).  For the third period, comprised of 13.14 weeks, 47 proposals were submitted (16 of which were marked "paid," 17 of which were marked "didn't get," and 14 of which were unmarked).  For the last period, comprised of 13 weeks, 73 proposals were submitted (24 of which were marked "paid," 26 of which were marked "didn't get," and 23 of which were unmarked).

Allen's profit from these receipts was $9,025, an average weekly wage of $226.42.

Due to his physical limitations, Allen filed a Change of Condition Application on October 5, 2000, for "temporary total and/or temporary partial disability benefits beginning September 13, 2000 and continuing."[2]

## Analysis

Allen's contention that there is no credible evidence to support the commission's determination that he failed to market his residual wage earning capacity is not supported by the record. Under the Workers' Compensation Act, a disabled employee who seeks an award for temporary partial disability benefits has the burden of proving that he made a reasonable effort to market his remaining work capacity in order to receive continued benefits. See Virginia Int'l Terminals v. Moore, 22 Va. App. 396, 401, 470 S.E.2d 574, 577 (1996); see also Holly Farms Foods Inc. v. Carter, 15 Va. App. 29, 42, 422 S.E.2d 165, 172 (1992); National Linen Serv. v. McGuinn, 8 Va. App. 267, 269, 380 S.E.2d 31, 33 (1989); Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 100 (1987). "What constitutes a reasonable marketing effort depends on the facts

_____

[2] The initial benefits awarded to Allen by the commission included temporary partial disability benefits through June 7, 1999.

- 4 -

and circumstances of each case." Greif Companies v. Sipe, 16 Va. App. 709, 715, 434 S.E.2d 314, 318 (1993).

When evaluating the reasonableness of a claimant's efforts to market his residual wage earning capacity, the commission may consider the following factors: 1) the nature and extent of claimant's disability, 2) claimant's training, age, experience, and education, 3) the nature and extent of claimant's job search, 4) claimant's intent in conducting his job search, 5) the availability of jobs in the area suitable for claimant, considering his disability, and 6) any other matter affecting claimant's capacity to find suitable employment. McGuinn, 8 Va. App. at 277, 380 S.E.2d at 34. "The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the fact-finding judgment of the commission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal." Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000) (citing Ford Motor Company v. Hunt, 26 Va. App. 231, 239, 494 S.E.2d 152, 156 (1997)). Furthermore, k"[t]he commission . . . determines which of [the relevant] factors are more or less significant . . . ." McGuinn, 8 Va. App. at 272-73, 380 S.E.2d at 34-35.

On appeal, we view the evidence in the light most favorable to Southern, the prevailing party before the commission. Id. at 270, 380 S.E.2d at 33; see also Allen & Rocks Inc. v. Briggs, 28

- 5 -

Va. App. 662, 672, 508 S.E.2d 335, 340 (1998) (citations omitted).  So viewed, we find that the record fully supports the commission's finding that Allen failed to make reasonable efforts to market his residual capacity.  Allen is a master electrician, has his tradesmen and contractor licenses, earned his GED and has taken courses in business administration and computer science.  Notwithstanding these qualifications, he only sought and obtained work with two different employers from March 24, l999, the date of the injury, until March 21, 2000.  He left each position after short periods, stating his physical limitations led to his being "laid off."

Allen thereafter made no effort to find employment with other potential employers.  He did not fill out any job applications, and he did not consult newspaper classified advertisements.  He did not contact potential employers or produce a list of such contacts, nor did he register with the Virginia Employment Commission ("VEC") or utilize its services.  See McGuinn, 8 Va. App. at 272, 380 S.E.2d at 35 (finding a claimant should register with the VEC, use classified advertisements and submit lists of contacts/jobs applied for).  Instead of seeking employment within his residual wage earning capacity, Allen became self-employed by establishing his own electrical contracting business.

Allen's efforts to market his residual wage earning capacity were thus manifestly limited, at best. With this limited history of marketing his residual capacity, Allen elected to start his own business. Not only was the venture one in which he had no prior experience, his physical restrictions limited both the business opportunities available to him and his ability to perform some of the contracts for service he obtained. Indeed, he had to hire others to perform certain tasks that his physical limitations precluded. Allen's business yielded him approximately half of his pre-injury average weekly wage.

The record does not support Allen's contentions that, in determining that he failed to reasonably market his residual capacity, the commission failed to consider the nature of his injury and the consequent physical limitations it imposed. The commission characterized as "equivocal at best" Allen's testimony that he was fired by Southern because the injuries he sustained curtailed his ability to perform the job and that he was laid off from two subsequent positions because of his injury and the resulting physical limitations he suffered. Furthermore, neither the medical documentation nor the nature of his limitations necessarily leads to the conclusion that Allen urges. In short, the evidence fails to show that self-employment was Allen's only remaining employment option or that he could not successfully obtain employment with other

contractors that more fully reflect his residual earning capacity.

Allen further contends that the commission has erroneously and improperly established a presumption that self-employment cannot, as a matter of law, constitute a reasonable effort to market a claimant's residual wage earning capacity and that its decision rests on that presumption. We disagree that the commission's decision is based on such a presumption. Rather, it reflects a consideration of all the relevant factors established by McGuinn and our decisions in its progeny, as well as all the facts and circumstances established by the evidence in the case. The weight the commission determined to accord the relevant factors, including Allen's efforts to establish his own business, is within its unique domain as trier of fact. McGuinn, 8 Va. App. at 273, 380 S.E.2d at 34-35. This Court will not substitute its judgment on such matters of discretion for that of the commission. See O'Brien, 32 Va. App. at 221-22, 527 S.E.2d at 453.

For the reasons stated, we affirm the decision of the commission.

                                                    Affirmed.