COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Clements and Beales
Argued by teleconference


UPPY'S CONVENIENCE STORES
 AND FEDERATED MUTUAL
 INSURANCE COMPANY

                                                          MEMORANDUM OPINION[*] BY
v.        Record No. 1685-07-2                    JUDGE JEAN HARRISON CLEMENTS
                                                              APRIL 22, 2008
DOROTHY S. BLANTON


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Robert M. McAdam (Kalbaugh, Pfund & Messersmith, on brief), for
              appellants.

              Christopher C. Booberg (The Joel Bieber Law Firm, on brief), for
              appellee.


       Uppy's Convenience Stores and Federated Mutual Insurance Company (collectively,

employer) appeal a decision of the Workers' Compensation Commission (commission)

reinstating temporary total disability benefits to Dorothy S. Blanton (claimant) after her

unjustified refusal of selective employment.  Employer contends the commission erred in

reinstating temporary total disability benefits to claimant because the evidence was insufficient

to support the finding that claimant's disability was total as of November 17, 2006.  For the

reasons that follow, we affirm the commission's award.

       As the parties are fully conversant with the record in this case and because this

memorandum opinion carries no precedential value, this opinion recites only those facts and

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

## I. PROCEDURAL BACKGROUND

On April 11, 2005, claimant suffered a traumatic brain injury while working for employer. Employer accepted the injury as compensable, and the commission awarded claimant continuing temporary total disability benefits beginning April 12, 2005.

On June 19, 2006, employer offered claimant a light-duty position that was approved by Dr. David X. Cifu, a doctor who had examined claimant. Claimant did not accept employer's job offer.

On July 14, 2006, employer filed an application to suspend or terminate claimant's temporary total disability benefits award on the ground that she unjustifiably refused selective employment offered by employer on June 19, 2006. Employer paid benefits to claimant through July 17, 2006.

At the November 20, 2006 hearing on employer's application, claimant argued that her refusal was justified because the offered position was not within her physical restrictions and was not approved by her treating physician, Dr. Carlos A. Williams. The parties stipulated that, although claimant saw Dr. Cifu at the request of employer for an independent medical examination and returned for a follow-up visit, Dr. Williams was claimant's treating physician throughout the period at issue. The matter was submitted to the deputy commissioner on the record.

The deputy commissioner found that Dr. Cifu released claimant to light-duty work on March 30, 2006, and that Dr. Williams's failure until November 17, 2006, to expressly contradict or oppose that release amounted to an implicit adoption of it. Therefore, the deputy commissioner found that claimant's refusal of the selective employment offered by employer on

June 19, 2006, was unjustified. Accordingly, the deputy commissioner suspended claimant's award of temporary total disability benefits effective July 18, 2006.[1] However, relying on Dr. Williams's statement in a November 17, 2006 letter to claimant's counsel that claimant was not able "to assume any productive work activity until [it was proven] she could perform her routine work safe[l]y," the deputy commissioner found that claimant was totally disabled as of November 17, 2006, and reinstated claimant's award of continuing temporary total disability benefits effective that date.

Employer appealed the reinstatement of benefits, arguing that the deputy commissioner "erred by following the November 17, 2006 opinion from Dr. Williams because [Dr. Williams] seem[ed] to incorrectly link . . . claimant's ability to work to her ability to do her pre-injury work." The full commission agreed with employer that "the correct legal standard for determining . . . claimant's ability to do part-time work [was] not her ability to perform her pre-injury work." However, relying on Dr. Williams's statement in his November 17, 2006 letter that claimant's function level had declined since she had been off the drug Namenda and the fact that Dr. Cifu had not recently examined claimant, the commission affirmed the deputy commissioner's finding that claimant was entitled to reinstatement of temporary total disability benefits as of November 17, 2006.

This appeal by employer followed.

II. ANALYSIS

On appeal, employer contends there was no credible evidence in the record to support the commission's finding that claimant was entitled to reinstatement of temporary total disability benefits effective November 17, 2006. Specifically, employer argues that nothing in Dr. Williams's November 17, 2006 letter established that claimant was totally disabled at the

---

[1] Neither party appealed this determination to the full commission.

time.  Thus, employer concludes, the commission erred, as a matter of law, in reinstating claimant's continuing temporary total disability benefits as of November 17, 2006.  We disagree.

The commission's determination whether a claimant is totally disabled is a finding of fact.  See Leadbetter, Inc. v. Penkalski, 21 Va. App. 427, 433, 464 S.E.2d 554, 557 (1995) (en banc).  Moreover, the "commission's interpretation of the medical evidence is a finding of fact." Ford Motor Co. v. Hunt, 26 Va. App. 231, 236, 494 S.E.2d 152, 155 (1997).

Under settled principles of appellate review, "[f]actual findings of the commission that are supported by credible evidence are conclusive and binding upon this Court on appeal." Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).  "If there is evidence, or reasonable inferences can be drawn from the evidence, to support the [c]ommission's findings, they will not be disturbed on review, even though there is evidence in the record to support a contrary finding."  Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).  The commission, in its role as fact finder, "determines the weight to be accorded the various evidentiary submissions."  Bass v. City of Richmond Police Dep't, 258 Va. 103, 114, 515 S.E.2d 557, 563 (1999).

In reinstating claimant's award of temporary total disability benefits, the commission gave the greatest weight to Dr. Williams's November 17, 2006 letter.  Interpreting that letter within the context of the other medical evidence in the record, the commission found that Dr. Williams diagnosed claimant as being totally disabled.  Credible evidence supports that finding.

Viewed in the light most favorable to claimant, see R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990), the medical evidence establishes that, in June 2005, claimant's treating physician, Dr. Williams, diagnosed claimant's compensable injury as a

"severe closed brain injury."  Dr. Williams opined that claimant "was unable to return to work" at that time.

Neuropsychological testing in September 2005 revealed that, as a result of her traumatic brain injury, claimant had "executive inefficiencies" as well as "loss of balance/gait disturbance."  It was recommended that claimant not return to work until "her motor/balance symptoms ha[d] been successfully treated."

Examining claimant at employer's request in December 2005, Dr. Cifu diagnosed her as having a "mild traumatic brain injury" with symptoms "consistent with post concussive syndrome including headaches, memory deficits, behavioral dysfunction (depression), dizziness/blacking out and associated functional limitations."  Dr. Cifu also noted that claimant reported "difficulties with mobility and balance."  Dr. Cifu opined that, once claimant "had a work up of the issues listed," it would be "very appropriate for her to return to some cognitively stimulating activities such as work."

After seeing claimant in February 2006, Dr. Williams continued to keep claimant out of work, noting that she needed an eye examination and vocational and driver's evaluations "before returning to any productive activity in order to ensure her[] and other people's safety."
Dr. Williams also noted that claimant had recently "backed into a pole" while driving.

Following his final visit with claimant in March 2006, Dr. Cifu noted that claimant continued to have "dizzy episodes" and "was unable to drive . . . secondary to these dizzy spells."  Nevertheless, Dr. Cifu opined that claimant was "able to perform sedentary level activity, for 20 hours a week."  Accordingly, Dr. Cifu cleared claimant for "return to sedentary

level work" and approved for claimant a part-time job with employer as a "maintenance helper-inspec[tor]."[2] Dr. Cifu also took claimant off the drug Namenda.

After examining claimant in May 2006, Dr. Williams noted that claimant experienced "headaches, memory impairment and poor balance" as a result of her compensable brain injury and reported that claimant had "had several falls due [to] her instabil[it]y." Noting there was paperwork in claimant's chart regarding her "returning to work for 20 hours per week," Dr. Williams opined that claimant's memory problem would be "a significant handicap in her ability to work" and that claimant would "need[] an eye exam [and] a vocational and driver's evaluation before returning to any productive activity." Dr. Williams, however, did not specifically address Dr. Cifu's release of claimant to light-duty work.

In his November 17, 2006 letter, Dr. Williams stated that he had previously sent claimant for an eye examination and vocational and driver's evaluations, but that those tests had not yet been performed. Then, specifically responding to Dr. Cifu's release of claimant to light-duty work, Dr. Williams referenced the results of claimant's most recent MRI, her neuropsychological testing results, and her clinical symptoms, and noted:

> I recommend to re-evaluate[] the patient[']s ability to drive, to have a complete ophthalmological exam, blood pressure, and depression evaluation. I do not believe that the patient is capab[le of] assum[ing] any productive work activity until we have prove[n] that she [can] perform her routine work safe[l]y. Medically, her condition has not improved and her function level has declined since she has been off the Namenda.

Although the November 17, 2006 letter is not a model of clarity in terms of setting forth Dr. Williams's opinion about claimant's ability to work, we agree with the commission that, when considered in conjunction with the other medical evidence in the record, it constitutes

---

[2] Interestingly, although Dr. Cifu released claimant to "sedentary level work" only, the job he approved for her involved "maintain[ing] floors, walls, mirrors, fixtures, coffee bar by using damp cloths, brushes, detergent, water, brooms."

sufficient credible evidence to support the finding that claimant's disability was total as of November 17, 2006. The two overriding constants in the medical evidence are the documented reports of claimant's persistent physical instability—indeed, even Dr. Cifu reported that claimant had problems with "dizziness/blacking out" and "difficulties with mobility and balance"—and Dr. Williams's related concern that, in order to ensure her safety and that of others, claimant would need to successfully complete an eye examination and vocational and driver's evaluations before returning to any type of work. Significantly, after examining claimant in May 2006, Dr. Williams noted that claimant experienced "poor balance" and had "had several falls due [to] her instabil[it]y." Dr. Williams further noted that claimant would "need[] an eye exam [and] vocational and driver's evaluation[s] before returning to *any* productive activity." (Emphasis added). In the November 17, 2006 letter, Dr. Williams indicated that not only had the needed testing not yet been performed, claimant's condition had not improved since May 2006 and, indeed, had gotten worse.

From this evidence, the commission could properly infer that Dr. Williams's November 17, 2006 letter was specifically intended to negate Dr. Cifu's earlier release of claimant to light-duty work and reflected Dr. Williams's opinion that, given the precarious state she was in as a result of her compensable injury, claimant could not be released to light-duty work until her ability to safely perform any work could be determined on the basis of an eye examination and vocational and driver's evaluations, and, because those tests had not yet been performed, she was totally disabled as of November 17, 2006. Thus, the November 17, 2006 letter, coupled with the other medical evidence in the record, constituted credible evidence to support the commission's

factual finding that claimant was entitled to reinstatement of temporary total disability benefits effective November 17, 2006.[3]

For these reasons, we hold that the commission did not err in reinstating claimant's continuing temporary total disability benefits as of November 17, 2006.  Accordingly, we affirm the commission's award.

Affirmed.

---

[3] Employer also contends the commission "erred in not shifting the burden of proof to . . . [c]laimant after . . . [e]mployer met its burden of proof by showing that . . . [c]laimant[] unjustifiably refused light duty."  Employer, however, did not raise this issue before the commission.  Accordingly, we will not consider it for the first time on appeal.  See Henrico Pub. Utils. v. Taylor, 34 Va. App. 233, 243, 540 S.E.2d 501, 506 (2001); Rule 5A:18.