COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McClanahan and Haley
Argued at Richmond, Virginia


JOHN QUINN, INC. AND
  WCAMC CONTRACTOR'S GROUP
  SELF-INSURANCE ASSOCIATION

                                                      MEMORANDUM OPINION[*] BY
v.        Record No. 2229-07-2                         JUDGE ROBERT P. FRANK
                                                           JULY 15, 2008
LAWRENCE E. BARRY


              FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Angela F. Gibbs (Arthur T. Aylward; Midkiff, Muncie & Ross, P.C.,
              on brief), for appellants.

              Stephen T. Harper (Kerns, Kastenbaum & Reinhardt, on brief), for
              appellee.


        John Quinn, Inc., and its insurer, WCAMC Contractors Group Self-Insurance

Association, (collectively employer), appeal an award of the Virginia Workers' Compensation

Commission to claimant, Lawrence E. Barry, for temporary partial disability benefits,

contending the commission erred in finding that claimant adequately marketed his residual work

capacity.  We agree and reverse the decision of the commission.

                                      BACKGROUND

        Claimant started working for employer framing residential homes in August 2004.[1]

Claimant's work required him to use various types of equipment, including power saws, drills,

---

    [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] John Quinn, Inc. was determined to be the statutory employer for workers'
compensation purposes.  Claimant worked directly for Larry Eugene Newcomb, a framing
contractor, and John Quinn, Inc. was the general contractor at the jobsite where claimant was
injured.

nail guns, and staple guns. Claimant frequently worked at heights eight to nine feet from the ground or floor below. Claimant often had to stand on wood joists or beams that were one and a half to three and a half inches wide, using various tools.

Claimant worked for employer 40 hours per week before the accident. Claimant earned an average weekly wage of $529.38. While working for employer before his injury, claimant also held a part-time position at Home Depot, working 25 to 30 hours per week. Claimant's average weekly wage at this part-time position amounted to $286.68.

Claimant received a compensable injury to his right eye on September 21, 2005 while using a nail gun. Claimant had sustained "a full thickness corneal laceration" that required surgery the day following the accident, and was diagnosed with "traumatic cataract." Claimant's treating physician, Dr. Jason A. Chiappetta, informed claimant that he would eventually require additional surgery to repair the cataract, but that the surgery could not be performed "until the eye is stabilized."[2] Claimant was released to work full time on October 14, 2005, but his physician noted that his work "may be limited by his impaired vision and depth perception." Dr. Chiappetta stated that claimant could not see any letters on an eye chart with his right eye, but opined that claimant "could rely on the vision from his left eye to perform tasks."

Claimant testified that, after the accident, he was "blind" in his right eye, and could see only light but could not "make out anything." Claimant noted that he could not return to work for employer, as he could not "see lines," had "no depth perception," and could not "tell where my feet are going." Claimant stated that he had difficulty navigating steps and perceiving where others were walking around him. Claimant testified that he felt it would be dangerous for him to

---

[2] Claimant testified that his treating physician referred him to Dr. Sanborn, who informed claimant upon further examination and evaluation that he will "probably" require a "retina transplant" and "maybe a cornea transplant." No additional surgery had taken place as of the hearing before the deputy commissioner on July 25, 2006.

continue framing houses.[3]   On cross-examination, claimant admitted that he drives his car every day, that he does not have any restrictions on his driver's license, and that he is not required to wear any glasses.

After he was released to return to work, claimant increased his hours at Home Depot to 40 hours per week.  Claimant indicated that his duties at that position are restricted based on his vision limitations, specifically that he is prohibited from operating any of the heavy equipment or lift equipment.  Claimant did not seek any other employment.[4]   Claimant earned a post-injury average weekly wage of $476.16, an increase of $189.48 from what he earned at Home Depot before his injury.

The commission found that "claimant now is unable to perform his pre-injury job with [employer] because he has lost depth perception in the right eye and cannot stand on boards or ladders."  The commission held that

> [c]ertainly a claimant must fully market and not limit employment, but the wages earned post-accident is but one factor to consider. When we consider other pertinent factors, such as the fact that the claimant's physical limitations preclude many manufacturing and construction jobs, and the fact that he increased his hours at Home Depot from a part-time position to a full-time position, we find that the claimant adequately marketed.

---

[3] Employer did not offer light duty employment to claimant after his injury.

[4] At the hearing before the deputy commissioner, claimant was asked by employer's counsel whether he had "looked for work at any other location."  Claimant answered, "No, I haven't."

The commission entered an award of temporary partial disability benefits of $226.60, "based on the difference between his pre-injury average weekly wage of $529.38 and the increased post-accident earnings at Home Depot, $189.48."[5]

This appeal follows.

ANALYSIS

Employer, on appeal, contends the evidence was not sufficient to prove claimant had adequately marketed his residual capacity. We agree.[6]

"A partially disabled employee 'who seeks compensation of the wage differential between his new and his old jobs, has the burden of proving that he has made a reasonable effort to market his full remaining work capacity.'" Va. Natural Gas, Inc. v. Clinton Tennessee, 50 Va. App. 270, 282, 649 S.E.2d 206, 212 (2007) (quoting Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 270, 380 S.E.2d 31, 33 (1989)). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." Nat'l Linen Serv., 8 Va. App. at 270, 380 S.E.2d at 32.

> "Factual findings of the commission that are supported by credible
> evidence are conclusive and binding upon this Court on appeal."
> Southern Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428
> S.E.2d 32, 34 (1993). "If there is evidence, or reasonable
> inferences can be drawn from the evidence, to support the
> [c]ommission's findings, they will not be disturbed on review,
> even though there is evidence in the record to support a contrary

---

[5] The "increased post-accident earnings at Home Depot" was computed by subtracting the part-time, pre-accident wage of $286.68 from the full-time, post-accident wage of $476.16. The "increase" reflected only that amount claimant earned for working the additional 10 to 15 hours per week after his injury.

[6] Because we find that claimant did not bear his burden of proving that he adequately marketed his residual capacity under Nat'l Linen Serv. v. McGuinn, 8 Va. App. 267, 380 S.E.2d 31 (1989), we do not address employer's argument regarding the interplay between the "dissimilar employment rule" and an assessment of whether a claimant has adequately marketed his residual capacity.

finding." Morris v. Badger Powhatan/Figgie Int'l, Inc., 3 Va. App. 276, 279, 348 S.E.2d 876, 877 (1986).

Hoy Constr., Inc. v. Flenner, 32 Va. App. 357, 361, 528 S.E.2d 148, 150 (2000). "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991).

> There are no fixed guidelines for determining what constitutes a "reasonable effort" by an employee to market residual work capacity. An employee must "exercise reasonable diligence in seeking employment" and the reasonableness of an employee's effort will be determined on a case by case basis, taking into account "all of the facts and surrounding circumstances."

Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 579 (2008) (quoting Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987)). However, some of the criteria that should be considered include:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

Nat'l Linen Serv., 8 Va. App. at 272, 380 S.E.2d at 34 (footnotes omitted). "In sum, an employee 'must present some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition and has failed to find a job, either due to his injury or because no such work was available in the community.'" Favinger, 275 Va. at 90, 654 S.E.2d at 579 (quoting Nat'l Linen Serv., 8 Va. App. at 271, 380 S.E.2d at 34).

Here, claimant admitted that he made no efforts to conduct a job search outside of increasing his hours at his pre-injury, part-time position. While there was testimony as to claimant's age and some of his work experience, limited to the two jobs he held at the time of his

injury, the record contains no evidence as to claimant's education, his training, or any work experience beyond the thirteen months he worked for employer and the six months he worked for Home Depot before his injury. Further, the record does not disclose any evidence as to the "availability of jobs in the area suitable" to claimant's residual capacity. While we agree with the commission's finding that claimant could not return to his pre-injury work with employer, or to any manufacturing or construction position, that finding does not satisfy claimant's burden to prove that the position that he accepted, working full-time with Home Depot, constituted an adequate marketing of his residual capacity.[7]

Both the commission and claimant relied upon this Court's opinion in City of Fairfax v. Massey, 11 Va. App. 680, 401 S.E.2d 439 (1991) (Massey II), for the proposition that claimant adequately marketed his residual capacity. In that case, this Court had before it petitions for rehearing from both the employer and the employee arising from the decision of a panel affirming the commission, City of Fairfax v. Massey, 11 Va. App. 238, 397 S.E.2d 679 (1990) (Massey I). Employer had petitioned this Court for rehearing because it believed this Court had "failed to address" whether employee had adequately marketed his residual capacity by increasing his hours at a position where he had worked part-time before his injury, "'such that the employer is entitled to a credit for all wages earned.'" Massey II, 11 Va. App. at 681, 401 S.E.2d at 440. The Court noted that, when the commission changed the employee's award from one for total incapacity to one for partial incapacity "based on [the employee's] return to dissimilar part-time employment," the commission had "necessarily concluded that the employee

_____

[7] We do not suggest, as employer contends, that claimant had to seek employment working more than 40 hours per week. Indeed, under the appropriate circumstances, claimant's full-time position with Home Depot, with no other employment, may have constituted reasonable, good-faith efforts to market his residual capacity. However, on this record, we cannot find that claimant met his burden. Claimant had to provide some evidence of his efforts to find employment and the other jobs available to him, or the lack thereof, that made his acceptance of a full-time position with Home Depot a reasonable decision.

had marketed his residual work capacity." Id.  The Court stated that Massey I had affirmed the commission's decision and that it did not "interpret the employer's appeal to challenge this aspect of the commission's decision," as that part of the decision had been in the employer's favor.  Id.

Thus, the Court, in Massey II, acknowledged that it had not considered the merits of whether or not the employee adequately marketed his residual capacity by increasing his hours at a part-time position he held before his injury.  Neither Massey I nor Massey II, then, provides any support for the commission's decision or for the claimant's position on appeal, as neither opinion analyzed the employee's efforts to market his residual capacity.

We are guided by the Supreme Court of Virginia's recent decision in Favinger, 275 Va. 83, 654 S.E.2d 575.  There, Favinger worked full-time in a body shop for employer, and also had the opportunity to work overtime hours.  Id. at 86, 654 S.E.2d at 576.  After his injury, Favinger returned to a light-duty position with the same employer, earning the same wage as he earned pre-injury.  Id.  However, in this light-duty position, Favinger was not offered any overtime work.  Id.  Favinger filed a claim for temporary partial disability benefits, based on this lost overtime.  Id. at 86, 654 S.E.2d at 577.  The Supreme Court reversed the commission's award of benefits based on the lost overtime, holding that there was no evidence in the record demonstrating that Favinger had made any efforts to market his residual capacity.  Id. at 90, 654 S.E.2d at 579.  The Court found that Favinger had the burden of proving that "available jobs within his capacity would have interfered with his duties at [employer], including his ability to accept overtime work when offered by [employer]."  Id. at 90-91, 654 S.E.2d at 579.  The mere fact that Favinger accepted the selective employment offered by his employer, and remained available to work any overtime hours offered, "did not negate the requirement that he make a

reasonable effort to market his residual work capacity, i.e., the additional 10 hours of overtime."[8] Id. at 91, 654 S.E.2d at 579.

Claimant did not meet his burden to show that he adequately marketed his residual capacity by accepting a full-time position with Home Depot. "'The mere fact that the employee obtained a new job, where the pay is substantially less than that received at the old job, is, standing alone, insufficient proof of making a reasonable effort to market one's remaining work capacity.'" Clements v. Riverside Walter Reed Hosp., 40 Va. App. 214, 226-27, 578 S.E.2d 814, 820 (2003) (quoting Nat'l Linen Serv., 8 Va. App. at 268, 380 S.E.2d at 32); see also Allen v. S. Commer. Repair, Inc., 40 Va. App. 116, 121-23, 578 S.E.2d 64, 67 (2003) (holding that claimant, a master electrician, did not prove he had adequately marketed his residual capacity by obtaining two different jobs, which he subsequently left due to his physical limitations, and then starting his own electrical contracting business, as he "made no effort to find employment with other potential employers" and he provided no evidence that self-employment was the "only remaining employment option or that he could not successfully obtain employment with other contractors that more fully reflect his residual earning capacity").

CONCLUSION

We hold that the commission erred in finding that claimant adequately marketed his residual capacity, as claimant failed to make any efforts to find other employment, failed to provide evidence of his training, experience, or education, and failed to provide any evidence of the jobs available in his area that were suitable to his residual capacity. We find that claimant

---

[8] Unlike the instant case, the Court in Favinger had before it a claim for temporary partial disability benefits based solely on lost overtime hours. Here, claimant was not claiming a loss of wages from Home Depot; he claimed only a discrepancy in the amount he earned working 40 hours per week for employer before the accident and the amount he earned working 40 hours per week for Home Depot after the accident. Thus, we need not consider employer's argument that claimant had a duty to market his capacity to work 65 to 70 hours per week.

failed to meet his burden of proof, and we reverse the decision of the commission awarding claimant temporary partial disability benefits.

<u>Reversed.</u>