COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Felton, Judge Frank and Senior Judge Bumgardner
Argued at Chesapeake, Virginia


COUNTY OF JAMES CITY FIRE DEPARTMENT
  AND VIRGINIA MUNICIPAL GROUP
  SELF-INSURANCE ASSOCIATION
                                                              OPINION BY
v.      Record No. 0225-09-1                       JUDGE ROBERT P. FRANK
                                                              AUGUST 4, 2009
WARREN EDWARD SMITH


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Ralph L. Whitt, Jr. (Brandon R. Jordan; Whitt & Del Bueno, P.C., on
        briefs), for appellants.

        Joseph F. Verser (Richard B. Donaldson, Jr.; Jones, Blechman,
        Woltz & Kelly, P.C., on brief), for appellee.


        County of James City Fire Department and Virginia Municipal Group Self-Insurance

Association, (collectively appellant), appeal the decision of the Workers' Compensation

Commission (commission) which awarded temporary partial benefits to Warren Edward Smith

(claimant).  Appellant contends the commission erred in finding claimant adequately marketed

his residual work capacity.[1]  For the reasons stated, we reverse the commission's decision.

                                          BACKGROUND

        Claimant, age sixty-one at the time of the hearing before the deputy commissioner, had

been employed by appellant as a firefighter/emergency medical technician captain.  His

employment spanned thirty-eight years.  As captain, he supervised four or five firefighters and

---

[1] While appellant raised four questions presented, only one issue is before us as it was
before the commission, i.e., whether claimant marketed his residual work capacity.  Subsumed in
this issue is whether claimant earned all he is "able to earn" under Code § 65.2-502.

paramedics. He also fought fires, pulling heavy hose lines and ladders. Claimant characterized his job as "management and mid management." His responsibilities included office work, evaluations, and recording "leave time," and he averaged six to seven emergency calls a day. Pre-injury, claimant averaged a weekly wage of $1,339.65. Claimant characterized his work as stressful.[2] Claimant has been under continual care with Dr. Keith E. Hanger, a cardiologist. He discussed potential job opportunities with Dr. Hanger and was advised he should avoid stressful employment.

Claimant testified that within several weeks of the November 14, 2007 deputy commissioner's hearing, he had sought employment with the County as a park attendant and was waiting to hear from the County. That job would pay between $11 and $13 per hour. Within the same time period, he sought employment with a construction company, involving "light construction," paying $8 to $9 per hour. He also applied for employment at the Virginia Employment Commission (VEC) within the same time frame, but the computers were "down" and he was unable to complete the application process. However, VEC personnel instructed claimant on the use of the computer to search for jobs. Claimant testified that since the beginning of 2007, he spoke with a "few here and there just putting feelers out just trying to find – and going through newspapers looking at ads . . . ." There was no testimony as to any specific job inquiries. As early as November 2006, claimant knew that he could perform some type of work, but he did not know the type of work he could accept.

Claimant did secure employment on November 7, 2007 with Wright Signs, as a sign assembler. At oral argument, claimant admitted this was a part-time job. Pay stubs indicate

---

[2] Claimant had retired from his firefighter's job with a heart related occupational disease on December 31, 2006, although his last actual workday was July 3, 2006. Claimant had experienced atrial fibrillation during a stress test prior to retirement and subsequently during a nuclear stress test. He had experienced rapid heartbeat in the summer of 2007 when performing yard work.

claimant worked substantially less than forty hours each of his first two weeks of employment.[3] Wright Signs indicated to claimant that at a thirty-day and ninety-day review, the company would consider a "several dollars per hour" increase. Claimant testified he would leave the job at Wright if a higher paying job arose.

On cross-examination, claimant admitted in the week since he accepted the Wright job, he had not sought other employment. However, claimant testified he would continue to seek employment through VEC as soon as its website was operational.

Claimant initially filed his claim on October 6, 2006 and an amended claim April 20, 2007. The commission sent a notice to claimant on April 19, 2007 for a July 2, 2007 hearing. Another notice was sent May 9, 2007 for a September 18, 2007 hearing. That hearing was continued. Finally, the commission sent a notice on July 11, 2007 for the November 14, 2007 hearing.

The deputy commissioner found claimant "reasonably marketed his remaining work capacity commencing November 7, 2007," and awarded claimant temporary partial disability benefits from November 7, 2007, and continuing.

The full commission affirmed the deputy's finding:

> We find that the claimant had adequately marketed his residual work capacity as of the date of the hearing. Although the job that he found paid considerably less than his pre-injury average weekly wage, he had not stopped looking for work. The claimant had submitted at least two applications the week before obtaining the job with Wright, and was waiting to hear from those two employers. Furthermore, he testified that he went to the VEC to register, but their computers were down. The claimant stated that he intended to register and to look for jobs through their website. He also said that he was willing to take a higher paying position if offered. Based on this evidence, under the circumstances of this

---

[3] Pay stubs submitted show that claimant worked fourteen hours the first week, 16.58 hours the second week, and 20.59 hours during his third week of employment with Wright Signs.

case, we find that at the time of the hearing, the claimant had adequately marked his residual work capacity.

This appeal follows.

## ANALYSIS

Appellant contends claimant failed to find suitable work, thus not earning what he is "able to earn" when he accepted the job at Wright Signs. Further, appellant maintains claimant did not reasonably market his residual work capacity. Appellant also challenges the commission's finding that claimant had not stopped seeking employment.[4]

The Supreme Court of Virginia, in Ford Motor Company v. Favinger, 275 Va. 83, 654 S.E.2d 575 (2008), expounded the standard of review and burden of proof in such cases.

> An award by the Commission is conclusive and binding as to all questions of fact. Code § 65.2-706(A). The determination as to whether an employee seeking temporary partial disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission's fact-finding, and if the Commission's factual conclusion on that question is supported by credible evidence, it will not be disturbed on appeal. The Commission's factual findings, however, are "'conclusive and binding' only to the extent that they are 'predicated upon evidence introduced or appearing in the proceedings.'" Uninsured Employer's Fund v. Gabriel, 272 Va. 659, 664, 636 S.E.2d 408, 411 (2006) (quoting Vanzant v. Southern Bending Co., 143 Va. 244, 246, 129 S.E. 268, 268 (1925)). If the Commission's findings of fact are not based on credible evidence, "its findings are not binding and the question presented becomes one of law." Great Atlantic & Pacific Tea Co. v. Robertson, 218 Va. 1051, 1053, 243 S.E.2d 234, 235 (1978) (citing Conner v. Bragg, 203 Va. 204, 207, 123 S.E.2d 393, 395 (1962)).

Favinger, 275 Va. at 88, 654 S.E.2d at 578 (other citations omitted).

---

[4] Appellant also argues on brief that in finding claimant sufficiently marketed his residual work capacity, the full commission erroneously relied on the claimant's marketing efforts prior to the time period for which benefits were sought. Because we reverse the commission on other grounds, we need not address this argument.

In a claim for temporary partial disability, the employee "[has] the burden of proving that he [has] made a reasonable effort to procure suitable work but [is] unable to market his remaining work capacity." Wash. Metro. Area Trans. Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985); see also White v. Redman Corp., 41 Va. App. 287, 292, 584 S.E.2d 462, 464 (2003) ("A partially incapacitated employee . . . is not entitled to temporary total disability benefits unless he has made a reasonable effort to market his remaining capacity for work.").

There are no fixed guidelines for determining what constitutes a "reasonable effort" by an employee to market residual work capacity. Great Atlantic & Pacific Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987). An employee must "exercise reasonable diligence in seeking employment" and the reasonableness of an employee's effort will be determined on a case-by-case basis, taking into account "all of the facts and surrounding circumstances." Id. Some of the criteria, however, that should be considered include:

> (1) the nature and extent of [the] employee's disability; (2) the employee's training, age, experience, and education; (3) the nature and extent of [the] employee's job search; (4) the employee's intent in conducting his job search; (5) the availability of jobs in the area suitable for the employee, considering his disability; and (6) any other matter affecting [the] employee's capacity to find suitable employment.

National Linen Service v. McGuinn, 8 Va. App. 267, 272-73, 380 S.E.2d 31, 34 (1989) (footnotes omitted). Thus, an employee "must present 'some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition' and has failed to find a job, either due to his injury or because no such work was available in the community." Id. at 271, 380 S.E.2d at 34 (quoting Dunkin Donuts of America, Inc. v. Watson, 366 A.2d 1121, 1126 (Me. 1976)).

"In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to [claimant], as he was the prevailing party before the commission." Id. at 270, 380 S.E.2d at 33.

Since whether claimant made reasonable efforts to market his residual work capacity is a factual determination, we must determine whether the commission's finding is supported by credible evidence. We find as a matter of law that it is not. Favinger, 275 Va. at 88, 654 S.E.2d at 578.

The record reveals that claimant had years of experience as an emergency medical technician/firefighter. This employment involved management and personnel responsibilities. The last day that claimant worked as a captain for employer was July 3, 2006, but he retired under disability on December 31, 2006.

Claimant initially filed his claim with the commission on October 6, 2006 as amended on April 20, 2007. The commission notified claimant on April 19, 2007 and May 9, 2007 for hearings that were continued. On July 17, 2007, claimant was notified of the November 14, 2007 hearing.

Within two weeks of the deputy commissioner's hearing, claimant sought a job with the County, with a construction firm, and went to VEC once. From the first of 2007 until less than two weeks before the deputy's hearing, claimant described his efforts to obtain employment as speaking with "a few here and there just putting feelers out . . . ." He also consulted the newspapers "looking at ads trying to determine what was out there." Claimant never testified he interviewed for any specific job, whether he made any job applications, or followed through on any leads. Thus, while claimant retired from employer under disability December 31, 2006, he only began an earnest effort to find employment some ten days before the deputy's hearing of November 14, 2007.

Claimant acknowledged as early as November 2006, he knew he could perform some type of work, but he did not know the extent of work he could accept. Medically, the only restriction imposed by Dr. Hanger was to avoid stressful or hazardous employment.

Nevertheless, claimant obtained part-time employment on November 7, 2007, one week before the hearing at an average weekly wage significantly less than his pre-retirement wage. In National Linen Service, we held that "the mere fact that the employee obtained a new job, where the pay is substantially less than that received at the old job, is, standing alone, insufficient proof of making a reasonable effort to market one's remaining work capacity." National Linen Service, 8 Va. App. at 268, 380 S.E.2d at 32.

"[A]n employee should present evidence of: (1) the names of businesses he contacted; (2) the types of positions sought; (3) the number of contacts made; and (4) the time frame within which work was sought." Id. at 273 n.2, 380 S.E.2d at 35 n.2 (1989). Claimant failed to meet this burden for January through mid-November, 2007.

In order to determine if claimant reasonably marketed his residual work capacity, we apply the six factors enunciated in National Linen Service.

1. The nature and extent of claimant's disability. One medical restriction was claimant's inability to be employed in a stressful job. Dr. Hanger, because of a certain medication prescribed to claimant, opined that claimant should avoid "any kind of occupational situation that would involve significant hazards with falls, nor should he be placed in a situation where he is exposed to hazardous situations or to emergent situations."

2. Claimant's training, age, experience, and education. Claimant was sixty-one years old with thirty-eight years experience as a firefighter and emergency medical technician. His job required responding to emergencies. He also had management and personnel responsibilities.

3. Nature and extent of claimant's job search. This factor has been discussed above.

4. <u>Claimant's intent in conducting job search</u>. As indicated above, claimant waited until less than two weeks before the deputy's hearing to conduct a legitimate job search. This truncated period prevented claimant from effectively pursuing VEC resources or from determining the availability of higher paying positions with the County or the construction firm.

By severely limiting the window of opportunity for better paying jobs, we conclude claimant did not exhibit "good faith" in his job quest. <u>See</u> <u>National Linen Service</u>, 8 Va. App. at 271, 380 S.E.2d at 34 (holding an employee "must present 'some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition' and has failed to find a job, either due to his injury or because no such work was available in the community").

5. <u>Availability of jobs in the area suitable for claimant considering claimant's disability</u>. Claimant produced no evidence that jobs were not available in related fields, such as in the management, medical or personnel areas.

6. <u>Any other matters affecting claimant's capacity to find suitable employment</u>. Claimant adduced no testimony as to any other relevant matters.

Because claimant waited over ten months to actively seek employment, his own inaction severely limited his ability to reasonably market his residual work capacity. Further, claimant offered no evidence as to what jobs, if any, were available considering his education, training, and limitations. He admitted, after accepting the part-time Wright job, he sought no further employment for higher pay. He presented no evidence as to why he did not seek employment for the ten-month period prior to November of 2007. He produced no evidence that more lucrative jobs were not available. We therefore conclude, as a matter of law, claimant did not reasonably market his residual work capacity.

Accordingly, the decision of the commission is reversed.

<u>Reversed.</u>