COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Senior Judge Coleman
Argued at Alexandria, Virginia


ROCHESTER CABLE AND
  INSURANCE COMPANY OF THE
  STATE OF PENNSYLVANIA
                                              MEMORANDUM OPINION* BY
v.      Record No. 2139-09-4                  JUDGE SAM W. COLEMAN III
                                                    JUNE 8, 2010

MELISSA ANN CARPENTER


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        Kathryn Lea Harman (Andrew M. Alexander; Semmes, Bowen &
        Semmes, on briefs), for appellants.

        David L. Bayne, Jr. (Ashcraft & Gerel, LLP, on brief), for appellee.


        Rochester Cable and the Insurance Company of the State of Pennsylvania (employer)

appeal a decision of the Workers' Compensation Commission (commission) finding Melissa

Ann Carpenter (claimant) reasonably refused the selective employment offered by employer and

that upon leaving her light-duty position, she adequately marketed her residual work capacity

and was entitled to temporary total disability benefits from January 18, 2008 and continuing.  For

the reasons stated, we affirm the commission's award of benefits.

                                    BACKGROUND

        "On appeal, we view the evidence in the light most favorable to [claimant,] the prevailing

party before the commission."  Cent. Va. Obstetrics & Gynecology Assocs., P.C. v. Whitfield,

42 Va. App. 264, 269, 590 S.E.2d 631, 634 (2004).  "Factual findings of the commission will not

---

* Pursuant to Code 17.1-413, this opinion is not designated for publication.

be disturbed on appeal, if based upon credible evidence." DePaul Med. Ctr. v. Brickhouse, 18 Va. App. 506, 507, 445 S.E.2d 494, 495 (1994).

So viewed, the evidence established that claimant sustained a compensable workplace injury to her right shoulder on June 14, 2006, which she aggravated in a separate incident on July 28, 2006. Prior to the injury she worked as a ferring operator, a job that required frequent heavy lifting. Because claimant required surgery and was unable to perform any work for a period of time afterward, employer agreed to pay temporary total disability (TTD) benefits from October 19, 2006 through January 17, 2007. Claimant was released to perform light-duty work in January 2007.

Wayne Clevenger, employer's workers' compensation coordinator, offered claimant a light-duty position within the company that involved data entry and filing. Claimant accepted the position with the knowledge that it involved "desk work," and she returned to work January 18, 2007. Claimant received work from two different departments within the company, each of which expected to have at least six weeks of work for her to complete. She completed her data entry assignments in "less than a week," her filing assignments in "less than two weeks," and all of her assignments by the end of January 2007. Claimant testified that she "begg[ed] everybody" to give her additional work, but "[n]o one had anything for [her] to do." She asked Clevenger for more work, but "like everybody else," he did not have any work to give her. She explained her understanding of the job when she accepted it was that it would involve "desk work," "[n]ot to go in there and do nothing . . . [a]nd to be driven crazy." She reported to work for between five and six consecutive weeks without having any work to do or tasks assigned to her. She explained that "[y]ou weren't allowed to have reading material" and were not permitted to do anything else while at work. She often came home crying because she spent her days "stuck in a room begging for work." She felt she "was basically pushed out of [her] job." Claimant's

husband testified on her behalf, echoing claimant's frustration with the lack of work available to her and confirming that she often came home from work crying as a result. Claimant left her job on March 12, 2007, seven weeks and four days after she began her light-duty position with employer, and five weeks and five days after she completed her assigned tasks. Although claimant called a friend in employer's human resources department and said "I probably wouldn't be seeing her anymore" before leaving the job, claimant conceded she did not provide employer with formal notice that she was not planning to return to work.

Claimant did not look for work from March 2007 through August 2007.[1] She again became totally disabled in August 2007, and after her second shoulder surgery in December 2007, claimant's doctor released her to perform light-duty work. Claimant looked for work suitable to her capacity from January 24, 2008 until June 12, 2008, the date of the hearing before the commission.

The commission found that after claimant was released to return to light-duty work on January 18, 2007, employer failed to provide claimant with a *bona fide* offer of light-duty employment or, alternatively, that claimant did not unjustifiably refuse the employment that was offered, that claimant adequately marketed her residual work capacity, and that claimant was entitled to TTD benefits from January 18, 2008 and continuing. Employer appealed each of the rulings of the commission.

---

[1] Claimant originally sought benefits for this period, but the deputy denied her request because she did not market her residual capacity between March and August 2007. Claimant has not appealed that denial. When claimant was again totally disabled from August 10, 2007 through January 17, 2008, employer paid claimant TTD benefits for that period.

ANALYSIS

I. Refusal of Selective Employment

"'Code § 65.2-510 was enacted . . . to encourage employers to procure employment suitable to partially incapacitated employees.'" Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 37, 542 S.E.2d 785, 788 (2001) (quoting Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993)) (alteration in original). "An employer seeking to terminate compensation benefits pursuant to the statute must establish '(1) a *bona fide* job offer suitable to the employee's capacity; (2) procured for the employee by the employer; and (3) an unjustified refusal by the employee to accept the job.'" Id. (quoting Ellerson v. W.O. Grubb Steel Erection Co., 1 Va. App. 97, 98, 335 S.E.2d 342, 344 (1993)). Whether each of these elements has been proved is a question of fact. Ellerson, 1 Va. App. at 98, 335 S.E.2d at 380.

"The term 'bona fide' is defined as 'made in good faith; without fraud or deceit.'" Shepherd v. Davis, 265 Va. 108, 121, 574 S.E.2d 514, 521 (2003) (quoting Black's Law Dictionary 168 (7th ed. 1999)). "To constitute a *bona fide* offer, the selective employment contemplated by Code § 65.2-510 must be upon terms and conditions sufficiently specific to permit informed consideration by an employee, and comprised of duties consistent with employee's remaining work capacity." Underwood, 35 Va. App. at 37, 542 S.E.2d at 788 (citation omitted). The employer bears the burden of proving it made a *bona fide* offer of selective employment within the employee's residual capacity. Am. Furniture Co. v. Doane, 230 Va. 39, 42, 334 S.E.2d 548, 550 (1985). "[If] the employer establishes that [*bona fide*] selective employment was offered to an employee that was within the employee's capacity to work, the employee bears the burden of establishing justification for refusing the offered employment." Food Lion, Inc. v. Lee, 16 Va. App. 616, 619, 431 S.E.2d 342, 344 (1993). Whether "[the] refusal was justified" is to be determined "in the opinion of the Commission." Code § 65.2-510.

- 4 -

"An employee who unjustifiably refuses selective employment forfeits his entitlement to wage loss benefits 'during the continuance of such refusal.'" Food Lion, Inc. v. Newsome, 30 Va. App. 21, 24, 515 S.E.2d 317, 319 (1999) (quoting Code § 65.2-510)).

"To support a finding of justification to refuse suitable selective employment, 'the reasons advanced must be such that a reasonable person desirous of employment would have refused the offer to work.'" Lee, 16 Va. App. at 619, 431 S.E.2d at 344 (quoting Johnson v. Va. Empl. Comm'n, 8 Va. App. 441, 447, 382 S.E.2d 476, 478 (1989)).

> [T]he determination of justification to refuse employment involves "a much broader inquiry than merely considering whether the intrinsic aspects of the job are acceptable to the prospective employee." Justification to refuse an offer of selective employment "may arise from factors totally independent of those criteria used to determine whether a job is suitable to a particular employee."

Id. (quoting Johnson, 8 Va. App. at 452, 382 S.E.2d at 481). This Court has observed further that

> [i]n any legislation as extensive as workers' compensation, it is impossible to anticipate and legislate every potential event intended to be covered. For that reason, phrases such as "unless in the opinion of the Commission such refusal was justified" are provided so that those appointed to implement the compensation laws may make discretionary judgments that carry out the legislative intent. [Where] credible evidence in the record supports it, we find that . . . the commission's opinion is in accord with that intent . . . .

Brickhouse, 18 Va. App. at 508, 445 S.E.2d at 495 (determining whether credible evidence in the record supported the commission's finding that a claimant's refusal of selective employment was justified).

Here, the evidence, when viewed in the light most favorable to claimant, the prevailing party below, established that employer offered claimant a position completing data entry and filing for two departments within the company. Claimant accepted that job, which she began on

January 18, 2007, and it originally provided her with a reasonable amount of light-duty work suitable to her restricted capacity, rendering it a *bona fide* offer for purposes of the statute. However, the evidence, viewed in the light most favorable to claimant, also established that by the end of January, less than two weeks after claimant began her light-duty position, she had completed all of her assigned tasks. Claimant requested more work from her supervisor and other co-workers, but despite her efforts to obtain work, she was without any tasks to complete for more than five weeks before she left the job. She testified she was not permitted to occupy herself in any other way during that period of time, such as by reading a book or a magazine. We conclude the extended length of time claimant was required to be present at work without having any work-related tasks to perform and without being allowed to engage in any other activities to occupy her time, combined with the evidence that this placed an emotional strain on her severe enough to cause her to go home crying on a regular basis and to feel as if she was being "driven crazy," supports the unanimous decision, "in the opinion of the Commission," that "[the] refusal was justified." Code § 65.2-510(A).[2]

As we recognized in Underwood, 35 Va. App. at 37, 542 S.E.2d at 788, the purpose of Code § 65.2-510 is to "encourage employers to rehire the disabled," Doles v. Indus. Comm'n, 810 P.2d 602, 607 (Ariz. Ct. App. 1990) (decided under Arizona's statutory scheme), and "yet [it should] not make disabled workers captives of one job," id. at 604, 607 (making this observation in the context of determining whether the claimant's "modified position accurately established

---

[2] Such circumstances render this case readily distinguishable from a situation in which an employee has temporary, intermittent slow periods between tasks. We do not attempt to define the precise parameters of what may constitute an unreasonable refusal of employment for all cases. We conclude only that the evidence in this case, viewed in the light most favorable to claimant, supports the commission's unanimous finding that this particular claimant's refusal of this particular position as it existed on March 12, 2007, was not unreasonable. We also note that we consider only the *factual reasons* for claimant's refusal and not the manner or means by which she chose to demonstrate that refusal.

- 6 -

[her] earning capacity"). "This could place a worker in the tenuous position of working under unbearable or demeaning circumstances should an unscrupulous employer desire to eliminate [workers' compensation] payments by coercing the worker into refusing the employer's offer of employment or coercing him into quitting subsequent to returning to work." Payne v. Country Pride Foods, Ltd., 525 So. 2d 106, 109 (La. Ct. App. 1988) (making this observation in the context of determining the claimant's post-injury wage earning capacity). We need not determine whether employer intentionally engaged in any such behavior in this case and conclude only that the evidence supports the commission's finding that claimant's refusal of the job as it existed on March 12, 2007, was justified.

## II. Marketing Residual Work Capacity

"In a claim for temporary partial disability, the employee '[has] the burden of proving that [she has] made reasonable effort to procure suitable work but [is] unable to market [her] remaining work capacity.'" County of James City Fire Dep't v. Smith, 54 Va. App. 448, 454, 680 S.E.2d 307, 310 (2009) (quoting Washington Metro. Area Transit Auth. v. Harrison, 228 Va. 598, 601, 324 S.E.2d 654, 656 (1985)). "There are no fixed guidelines for determining what constitutes a 'reasonable effort,'" but "[the] employee must 'exercise reasonable diligence in seeking employment' and the reasonableness of an employee's effort will be determined on a case-by-case basis, taking into account 'all of the facts and surrounding circumstances.'" Ford Motor Co. v. Favinger, 275 Va. 83, 89-90, 654 S.E.2d 575, 579 (2008) (quoting Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 467, 359 S.E.2d 98, 102 (1987)).

> An award by the Commission is conclusive and binding as to all questions of fact. The determination as to whether an employee seeking . . . disability benefits has made a reasonable effort to market his residual work capacity falls within the Commission's fact-finding, and if the Commission's factual conclusion on that

> question is supported by credible evidence, it will not be disturbed on appeal.

Id. at 88, 654 S.E.2d at 578 (citations omitted).

Prior to her workplace injuries, claimant had a physically demanding job as a ferring operator which required her to lift 50 pounds. After claimant injured her shoulder, her work restrictions prevented her from lifting more than 10 pounds, and she could not lift her arm over her head or exert any type of resistance with her arm. She testified that she completed a log documenting six of her contacts seeking employment, and she estimated that the total number of businesses she contacted in her search for suitable employment was somewhere between forty and fifty.[3] She had previously worked for the county as a teacher's assistant for handicapped students, a job she said was "kind of" "[her] passion." She wanted to return to that position after her injury, but she said her lifting restrictions prevented her from doing so because that position required her to be able to lift fifty pounds in order to physically restrain a student having a seizure or a temper tantrum. She also contacted the Culpeper County Day Care, which could not hire her. She started filling out a sheet of her job contacts, but she said she "got so disgusted with trying to find employment" because of her restrictions that she "gave up on filling them out." She explained that she applied for many fast food jobs, although she thought she was incapable of performing the tasks required for such jobs, "[b]ecause that's what's available." Although claimant merely telephoned the Virginia Employment Commission (VEC) and did not register with it, this fact is not dispositive; there is no *per se* rule barring employees who have otherwise marketed their residual work capacity from receiving benefits under the Act for failing to register with the VEC. Herbert Bros., Inc. v. Jenkins, 14 Va. App. 715, 717, 419 S.E.2d 283,

---

[3] Despite claimant's explanation that when she said she applied for forty to fifty jobs "that was just a number," the commission found her testimony to be persuasive, as it was entitled to do.

285 (1992).  Viewing the evidence in the light most favorable to claimant, we cannot conclude the commission erred in finding she engaged in a *bona fide* search to find appropriate work given her work restrictions, previous work experience, and the job market in the geographical area.  As such, we hold the commission did not err in awarding TTD from January 18, 2008 and continuing.

For these reasons, we affirm the decision of the commission.

<u>Affirmed.</u>